No. 19,764.

W. L. GUNN, *Appellant,* v. THE STOCK YARDS STATE BANK, *Appellee.*

### SYLLABUS BY THE COURT.

1. BANKING—*Right to Apply General Deposit on Depositor's Matured Note.* The right of a bank to enforce its lien or off-set against a general deposit and to apply the deposit to the matured indebtedness of the depositor does not depend upon an express direction or authority of the depositor, where there is no understanding or agreement to the contrary between the depositor and the bank.

2. SAME. There is ordinarily no distinction between the right of a bank to apply a general deposit to a debt due the bank on an overdue note of the depositor and its right to apply such deposit to his overdraft.

3. SAME—*No Notice of Interest of Third Person in Deposits.* On the facts stated in the opinion, it can not be said as a matter of law that a bank which applied a depositor's account upon an overdue note he owed the bank was charged with notice of an interest of a third person in the fund.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed March 11, 1916. Affirmed.

*T. A. Noftzger, George Gardner,* and *G. W. Cox,* all of Wichita, for the appellant.

*J. N. Haymaker, A. V. Roberts,* and *W. D. Jochems,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In September, 1913, W. L. Gunn and R. E. Bridge entered into an arrangement by which Bridge was to buy horses and mules on their joint account and Gunn was

to furnish money to pay for them.  Gunn signed blank checks drawn on the National Bank of Commerce of Wichita, which he gave to Bridge, and which were to be filled out by Bridge as he had occasion to use them in the business.  For more than a year previous thereto Bridge had kept an individual account with the Stock Yards State Bank of Wichita and had done considerable business through that bank.  Bridge filled out nine of the checks and deposited them to his individual account in the Stock Yards bank· on various dates from September 16 to October 25.  At the time the first check was deposited he owed the bank a note which was not then due.  On October 9, after the note matured, the bank charged his individual account with $418.95, the amount due on the note.  Gunn first learned on the 19th of October that the checks had been deposited to the credit of Bridge in the Stock Yards bank.  He thereupon demanded of the bank the balance of the fund, and learned for the first time that part of it had been applied upon the note.  Upon the refusal of the bank to refund the amount, he brought this action.  The case was tried without a jury and the court found in favor of the bank.  From this judgment the plaintiff appeals.  The only question is whether the bank had the right to apply the deposit to the payment of Bridge's indebtedness.

Plaintiff argues that the bank had no right to charge the note to the account of Bridge, first, because it knew that the deposit did not belong to Bridge.  The evidence to sustain this contention was quite meager and the court has found in the bank's favor and against the plaintiff upon the facts.  Second, it is said the bank knew Bridge was insolvent and was obtaining this money from "some other source," and therefore it was its duty to inquire into the circumstances.  The president of the bank testified that Bridge had been a heavy depositor for a year previous, depositing at one time $2645.  The cashier testified that he knew the Bridge Horse and Mule Company was insolvent but that he thought Bridge himself was solvent, although he would not have loaned him any money at the time these checks were deposited because he did not think he was entitled to more credit.  He understood Bridge was borrowing money to do business on, but he did not know from whom he was borrowing.  We are at a loss to understand how the mere fact that he deposited checks

drawn by the plaintiff in his favor was sufficient to put the bank upon inquiry as to any interest the drawer of the checks might have in the funds. The third reason suggested is, that Bridge never directly or impliedly gave the bank authority to charge the note to his account. But the right of a bank to enforce its lien or off-set against a general deposit and to apply the deposit to the matured indebtedness of the depositor does not depend upon any express direction or authority of the depositor, where there is no understanding or agreement to the contrary between the depositor and the bank.

What is called a banker's lien is well recognized in commercial law. As applied to a deposit of money it is more accurate to speak of it as a right of offset; but when applied to securities it is appropriately called a lien.

"Ordinarily that [the lien] attaches in favor of the bank upon the securities and moneys of the customer deposited in the usual course of business, for advances which are supposed to be made upon their credit. It attaches to such securities and funds, not only against the depositor, but against the unknown equities of all others in interest, unless modified or waived by some agreement, express or implied, or by conduct inconsistent with its assertion." (*National Bank v. Insurance Co.*, 104 U. S. 54, 71, 26 L. Ed. 693.)

"When a depositor opens an account in a bank that very act, in the absence of an agreement to the contrary, authorizes the appropriation of his deposit balance to any matured claims the bank may hold against him, the same as if he then executed an agreement in writing to that effect." (*Meyers v. New York County Nat. Bank*, 36 App. Div. 482, 484, 55 N. Y. Supp. 504.)

The bank had the same right to apply the deposit of Bridge to the payment of his overdue note that it had to cash a check drawn by him in payment of his house rent or grocer's bill. And if there was nothing in the circumstances under which the deposits were made to put the bank upon inquiry as to the interest of the plaintiff so that he could have recovered from the bank the amount of a check drawn by Bridge for the latter's personal use and paid by the bank, then there is no reason why upon the facts in this case the bank should be liable to the plaintiff.

The authorities make no distinction between the right of a bank to apply a general deposit to a debt due the bank upon an overdue note of the depositor and its right to apply the deposit to his overdraft. The only difference would seem to be

in the steps necessary to make the application. As a matter of bookkeeping an overdraft is automatically reduced by the amount of a subsequent deposit, while in order to apply a balance of deposit to a note the note must have matured and must be charged to the account by the bank with or without direction from the depositor.

In *Kimmel v. Bean,* 68 Kan. 598, 75 Pac. 1118, the syllabus reads:

"A bank which receives from an agent for deposit in his own name the money of his principal, without notice of the agency, is protected in applying it to a past due debt of the depositor to the same extent as in paying it out upon his checks, whenever such application is authorized by the agent, either expressly or by legal implication; and such authority ordinarily arises from the making of a deposit without other directions, where the debt to which it is applied is an overdraft."

As already observed, there is no difference between the payment of a past due debt evidenced by a note and the payment of an overdraft. The opinion in *Kimmel v. Bean,* supra, cites numerous authorities which are quite applicable to the present case and it is unnecessary to review them. Bridge might have cashed the checks at the National Bank of Commerce and deposited the cash in the Stock Yards bank, and, as was said in *Kimmel v. Bean,* supra, "the question presented would not have been materially different." (p. 605.) To the same effect see *Hatch v. National Bank,* 147 N. Y. 184, 41 N. E. 403, where it was said:

"If, therefore, Smith had come with the money, and with it had paid his debt over the counter, the amount could not have been recovered by the plaintiff, although admitted to have been actual proceeds of the stolen certificate. I think the situation was not at all changed because the debtor came with Ferris & Kimball's check which the bank collected." (p. 192.)

The adoption of the rule contended for by the plaintiff is opposed to that principle of justice which determines as between innocent parties upon whom shall fall the loss in the circumstances shown in this case. Gunn placed the checks, duly signed, in the hands of Bridge, with implied authority to fill in and cash them. We fail to discover any circumstances sufficient to authorize the court to declare as a matter of law that the bank had such notice of the equities or rights of the plaintiff as would put it on inquiry.

In *Martin v. Bank*, 66 Kan. 655, 72 Pac. 218, it was held the bank was not liable to account to the owner of a fund deposited by an agent in his own name and which the bank paid on his check without knowledge of any want of authority on the part of the agent.

A case more directly in point is *Tough v. Bank*, 89 Kan. 583, 132 Pac. 174. In that case it was held that upon the facts stated a bank which had credited a deposit upon the depositor's note was not charged with notice of an interest of a third person in the fund. An attempt is made to distinguish that case from this because there the application was made with the depositor's approval. There is no claim in this case that Bridge told the cashier it was all right to charge the note to his account, but if the bank had the right to offset the one debt against the other, it would make no difference that it was done without the knowledge or consent of the depositor.

The judgment is affirmed.