No. 26,124.

WILLIAM DOCKING (substituted for R. T. Kreipe), as receiver of The Halls Summit State Bank, *Appellant*, v. THE COMMERCIAL NATIONAL BANK, *Appellee*.

### SYLLABUS BY THE COURT.

1. BANKS AND BANKING—*Deposit Account—Obligations of Depositor—Set-off.* A bank may set off as against the deposit account of an insolvent depositor matured and unmatured obligations of the depositor to the bank held by the bank at the time of insolvency.

2. SAME—*Insolvent Depositor—Set-off—Illegal Preference.* Such a set-off cannot be regarded as an illegal preference or a violation of R. S. 9-142.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed May 9, 1925. Affirmed.

*Frank Doster, George S. Allen,* and *J. E. Addington,* all of Topeka, for the appellant.

*E. S. McAnany, M. L. Alden,* and *T. M. VanCleave,* all of Kanass City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by R. T. Kreipe, as receiver of the Halls Summit State Bank, to recover from the Commercial National Bank a balance of a deposit account in the hands of the latter alleged to have been due to the former when it became insolvent and passed into the control of the receiver. Judgment went against the receiver, and he appeals.

William Docking, as the successor of R. T. Kreipe, has been substituted for the latter. The case was tried on an agreed statement of facts, the most material parts of which are as follows:

Before March 6, 1923, the Halls Summit State Bank, which for convenience will be called Halls Bank, became insolvent and on that date the bank commissioner took charge thereof, and of all its rights and credits, and appointed Kreipe as receiver, with authority to close up the insolvent bank as the statutes provide. When Halls Bank ceased operations it had on deposit to its credit in the Commercial National Bank, which we will call the National Bank, $4,257.13, on an open checking account. The receiver demanded this amount from the defendant and it has refused to pay the same. On January 31, 1923, while Halls Bank had a balance in this open account in the National Bank, it borrowed from defendant the sum

of $2,200 on its promissory note, payable April 2, 1923, and gave three collaterial notes secured by chattel mortgages as security for the payment of the money borrowed. The sum of $1,000 was paid on this loan and credited on the note by the National Bank, and on March 6, 1923, the National Bank charged the unpaid balance of the note against the checking account of Halls Bank. Prior to its insolvency Halls Bank had rediscounted and indorsed notes to the National Bank and indorsed them in such a way as to make it liable to the defendant for the payment thereof at maturity in case the same were not collected by the defendant. To induce the National Bank to rediscount notes, Halls Bank by its board of directors executed a written guaranty by the passage of the following resolution.

"*Resolved,* That the president and cashier of this bank, or either of them, be and are hereby authorized in behalf of this bank to borrow money from the Commercial National Bank of Kansas City, Kan., and to make and deliver the note or other obligation of this bank in form required by the said The Commercial National Bank of Kansas City, Kan., for the payment of any sum so borrowed, pledging any of the bonds, stocks, bills receivable, or any other security or property of this bank therefor; and to discount or rediscount the bills receivable held by this bank at any time, or any part thereof, rendering the same negotiable by the endorsement of said officials, or either of them; hereby authorizing the said The Commercial National Bank of Kansas City, Kan., to charge the same to the account of this bank before, at or after maturity thereof, or of any thereof. This authority to be in force until revoked in writing."

Under its contract with the Halls Bank, the National Bank on March 6, 1923, charged to the account of the former not only the amount of the loan but also the rediscounted and uncollected notes to the number of fifteen, the aggregate amount of which was $3,-128.59, some of which were then due, but most of them had not matured. The notes so charged were then tendered to the receiver of Halls Bank, but the receiver did not accept them nor did he assent to the charging of any of the notes against the deposit account of Halls Bank. The trial court held that the National Bank was entitled to charge against the regular deposit of Halls Bank the indebtedness mentioned and gave judgment for the defendant.

It is contended by the plaintiff that the defendant had no right to set off either the matured or maturing indebtedness of the insolvent bank against the deposit. It is well settled that a bank may set off against a general deposit the matured indebtedness of a depositor. The right of set-off frequently spoken of as a lien, at-

taches in favor of a bank under which it may appropriate the balance of a deposit to any matured indebtedness of the depositor unless the right is modified or waived by some agreement express or implied between the parties. (*Gunn v. Bank*, 97 Kan. 404, 155 Pac. 796; *National Bank v. Insurance Co.* 104 U. S. 54; 7 C. J. 144, and cases cited.)

There is some diversity of judicial opinion as to the right of a bank to set off unmatured indebtedness against a deposit in case of the insolvency of a depositor, but the weight of authority is that the right exists. In 7 C. J. 656, it is stated:

"Where a depositor becomes insolvent the bank is, according to the great weight of authority, entitled to apply his deposit on an unmatured debt to the bank."

And a great many cases are cited in support of the text. The doctrine is based on mutuality of accounts and the equitable right of set-off where there is insolvency of the depositor. It has been said:

"The natural equity, to have mutual but unconnected demands between two parties who have been dealing with each other, set-off is, as a general rule, superior to the claim of any other creditor who has not dealt with the insolvent upon the faith of the specific fund against which the right of offset is claimed." (Waterman on Set-off, § 438.)

In *Hayden v. Citizens' Nat. Bk. of Balt.*, 120 Md. 163, there is a review of the authorities for and against the right of set-off in such cases, and the court, after analyzing the authorities, reached the conclusion that:

"A bank may set off upon the deposit account of an insolvent corporation its unmatured note held by the bank at the time of insolvency."

In a note to the text in 7 C. J. 656, it is said:

"The rule is general that a bank, holding a not yet due note of a debtor who is a depositor, has, upon the debtor's insolvency, an equitable right of set-off of the note against the deposit. *Wunderlich v. Merchants' Nat. Bank,* 109 Minn. 468, 124 N. W. 223, 134 Am. St. Rep. 788, 27 L. R. A. (N. S.) 811 and note, 18 Ann. Cas. 212. *Platts v. Metropolitan Nat. Bank,* 130 Minn. 219, 220, 153 N. W. 514.

"A bank which is summoned as garnishee in an action against one of its depositors may set off against the depositor's general account unmatured notes held by it at the time of the service of the garnishee summons, where it appears that the depositor is insolvent. *Wunderlich v. Merchants' Nat. Bank,* 109 Minn. 468, 470, 124 N. W. 223, 134 Am. St. Rep. 788, 27 L. R. A. (N. S.) 811, 18 Ann. Cas. 212, where it is said: 'The equitable doctrine of set-off had its origin in a very early day, and has always been applied by courts of equity, either with or without statutory authority, in all cases of mutual demands

where the dictates of natural justice rendered it appropriate; no superior rights of third persons having intervened before suit.' Waterman Set-Off, § 17; *Jeffries v. Evans*, 6 B. Mon. (Ky.) 119, 43 Am. D. 158; *Nashville Trust Co. v. Bank*, 91 Tenn. 336, 18 S. W. 822, 15 L. R. A. 710; *Hawkins v. Freeman*, 2 Eq. Cas. Abr. 10, 22 Reprint 9. Insolvency of one of the mutual debtors is the foundation for this relief, to the exclusion of the demands of third persons, except in those cases where by special circumstances their rights are superior to those of the debtor invoking the remedy. . . . And this, it seems, is the generally accepted doctrine of a majority of the courts of this country and England."

In *Schuler v. Israel*, 120 U. S. 506, the same doctrine was upheld in a proceeding against the bank which held a deposit of an insolvent depositor, and it set up the claim that the depositor was indebted to the bank in various sums, some of which were due and some not due, and the decision was that the bank had the right to appropriate the deposit in its hands to the security and payment of both matured and unmatured debts. Some of the courts in sustaining the lien say that insolvency in such cases operates to mature indebtedness. (*Hayden v. Citizens' Nat. Bank of Balt.*, supra; *Stewart v. National Security Bank*, 6 W. N. C. 399; 7 C. J. 144.) Whether or not that principle can be applied as a general rule, the general current of authority is that if one has money on deposit in a bank to which he is indebted, and becomes insolvent, the bank may set off such indebtedness, although not yet due, against its liability on the deposit.

It is contended that such an appropriation would amount to a preference and is contrary to the statute which reads:

"No bank, bankers, or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, except bonds of the United States, of the state of Kansas, or of some county, school district or municipality of the state of Kansas, or other securities may be deposited with the state treasurer as security for the deposit of state money and with the trustees of postal savings bank funds for the security of such funds." (R. S. 9-142.)

The statute provides that a bank may borrow money for temporary purposes not exceeding a certain limit, and that nothing in the law shall prevent a bank from rediscounting and transferring in good faith its negotiable notes. The equitable set-off doctrine cannot be regarded as a preference by the bank or its officers, but it is rather an application of the general equitable principle to the mutual accounts between an insolvent and the bank. It is an application authorized by law, which courts having jurisdiction in

law and equity combined may enforce in an appropriate action. The pledging of the assets of a bank to a depositor or creditor as collateral security is designated in the statute as a preference, yet as we have seen, the offset of mutual accounts in the circumstances stated is not a preference pledge of its assets by the bank or its officers, but is one made by the law on equitable grounds. It is not even regarded as a preference under the Federal Bankruptcy Act. (*Studley v. Boylston Bank,* 229 U. S. 523; *Fourth Nat. Bank v. Smith,* 240 Fed. 19; 7 C. J. 144.) It was also held not to be an unlawful preference under the insolvency statute of New Jersey where an insolvent company borrowed money from a bank upon two notes, one of which was due at the time of insolvency and the other not yet due. The insolvent had a deposit in the bank against which both notes were set off, and it was held not to be a preference and that the bank was entitled to set off the matured and unmatured notes against the deposit of the insolvent company. (*Shields v. John Shields Const. Co.,* 83 N. J. Eq. 21.) Plaintiff cites and relies on *Bank v. Bank,* 98 Kan. 109, 157 Pac. 392, where an action of replevin was brought to recover possession of securities which a creditor bank had wrongfully obtained from a debtor bank. The creditor bank had loaned the debtor bank a sum of money when the latter was in fact insolvent and the cashier had absconded, the agent of the creditor bank called on the debtor bank and procured the wife of the absconding cashier to turn over as collateral security for the loan substantially all the assets of the insolvent bank. This transfer of assets as security for the loan was held to be illegal, a violation of R. S. 9-142, and an illegal preference. That case, however, did not involve the mutuality of accounts which exist between a bank and its depositor, nor was the equitable right of set-off presented or determined in the action, and therefore is not an authority in this case.

Considerable is said about the resolution of the directors of the bank authorizing the borrowing of money and the pledging of the assets of the bank therefor, and also for the privilege of rediscounting paper of that bank, and it is said that it is ineffectual and did not add anything to the right of the National Bank. Whether or not it gave the National Bank additional rights is immaterial, since that bank had the right of set-off independent of the resolution. Holding that it had that right, it follows that the judgment of the district court must be affirmed.