SECURITY STATE BANK OF MELROSE, MINNESOTA,
   APPELLANT, *v.* FIRST NATIONAL BANK OF ISMAY,
   RESPONDENT.

(No.  6,008.)

(Submitted February 15, 1927. Decided February 28, 1927.)

[254 Pac. 417.]

*Chattel Mortgages — Filing — Constructive Notice — Banks and Banking—Deposit to Credit of Debtor of Bank—Application to Satisfaction of Debt—When Permissible—Nonsuit—When Proper.*

Chattel Mortgages—Filing—Constructive Notice to Whom.
   1.  The filing of a chattel mortgage imparts notice to those creditors of the mortgagor only, within the meaning of section 8279, Revised Codes, who are seeking to enforce their claims against the mortgaged property, not to those who are not.

Banks   and   Banking—Chattel   Mortgages—Proceeds—Deposit   to Credit of Debtor of Bank Without Instructions—Bank may Apply to Satisfaction of Debt, When.
   2.  Where money is deposited in a bank to the credit of one of its debtors, without an express agreement to the contrary or direction to apply it to a specific purpose, the bank may apply the deposit to the satisfaction of the debt; the rule applying where the deposit consists of the proceeds from the sale of the mortgaged property, in the absence of direction as to its disposition and of knowledge in the bank of their origin or of another's claim thereto.

Same—Case at Bar.
   3.  In an action by a mortgagee against a bank to recover the proceeds of a sale of mortgaged cattle deposited in the bank by the agent of the mortgagor who was indebted to it, and applied by it to the satisfaction of the latter's past-due note, the deposit having been made without direction as to its disposition, *held,* that conceding that the bank had knowledge of the mortgage, the evidence as to its knowledge of the origin of the money did no more than give rise to a conjecture that it came from the sale of cattle and that there was a possibility that such cattle might have been mortgaged was insufficient to submit to the jury and that therefore a nonsuit was properly granted.

---

   1.  See 5 R. C. L. 413.
   2.  Application of deposit to debt owing to bank, note, 36 A. L. R. 1379.  See, also, 3 R. C. L. 588.

Trial—Nonsuit—When Proper.
> 4. Where plaintiff fails to produce such evidence in support of a vital issue in his case as to enable the jury to arrive at a reasonably reliable conclusion, or produces evidence so unsubstantial that the court would feel bound to set the verdict rendered aside, a nonsuit should be granted.

---

[1]  Banks and Banking, 7 C. J., sec. 351, p. 653, n. 84. Chattel Mortgages, 11 C. J., sec. 227, p. 540, n. 39; sec. 353, p. 637, n. 81.
[2]  Banks and Banking, 7 C. J., sec. 351, p. 653, n. 84. Chattel Mortgages, 11 C. J., sec. 347, p. 635, n. 39, 40 New.
[3]  Chattel Mortgages, 11 C. J., sec. 353, p. 637, n. 81.
[4]  Trial, 38 Cyc., p. 1555, n. 8; p. 1556, n. 11, 13.

*Appeal from District Court, Custer County; S. D. McKinnon, Judge.*

ACTION by the Security State Bank of Melrose, Minnesota, against the First National Bank of Ismay. From a judgment of nonsuit plaintiff appeals. Affirmed.

*Mr. George W. Farr* and *Mr. Clyde L. McLemore,* for Appellant, submitted a brief; *Mr. Farr* argued the cause orally.

*Mr. George J. Murphy,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment of nonsuit in an action for the recovery of proceeds from the sale of mortgaged cattle.

The facts are undisputed and are substantially as follows: Two brothers, Elmer and A. C. Bair, reside in the vicinity of Ismay, in Custer county, and originally did all their banking business with defendant bank. In 1914, they borrowed from this bank and gave to it a chattel mortgage on certain cattle. In 1916, the mortgage note remaining unpaid, they sought a further loan for the purpose of purchasing additional cattle, but were refused. Elmer Bair then secured a loan from Himsl,

---

4. See 9 R. C. L. 205.

cashier of the First State Bank of Plevna, an agent for the plaintiff bank, and executed a chattel mortgage on the Bair cattle to plaintiff bank, which mortgage was filed in Custer county. Thereafter Bair Bros. did most of their banking business with the Plevna bank, but continued to carry an account with defendant bank and paid their mortgage debt to it. In 1918 Elmer Bair borrowed $460 from the defendant bank, and, being asked for security, told Ayers, cashier, with whom he had always done business, that he had no security to give. In 1919 plaintiff's mortgage was renewed and the renewal filed in Custer county. In the winter of 1919–20, with the consent of the mortgagee, Bair shipped the cattle to South Dakota, and in the fall of 1920 shipped twenty-one head thereof to Iowa, consigned to Clay, Robinson & Co., livestock commission merchants, without giving the consignee any direction as to the disposition of the proceeds of the sale, but "guessed" that, as the brand on the cattle was recorded, it would know where to send the money. The sale netted $808.65, which amount the consignee remitted to defendant bank, with instruction to place the same to the credit of Elmer and A. C. Bair, in whose joint names the brand was recorded. This remittance was received September 3. Ayers, cashier, credited the amount to the account of Elmer Bair, in which there was then a balance and against which both brothers had the right to check. He mailed a duplicate slip to Bair, and, after the lapse of twenty days, during which time he heard nothing from Bair, applied $445.55 of the remittance, with the former balance in the account, to the satisfaction of the Bair past-due note, marked the note "Paid," and sent it to Bair. On receipt of the canceled note, Bair called at the bank, and advised Ayers that the remittance should have gone to Himsl, and notified Himsl of what had been done. In December Himsl made demand upon Ayers, as cashier, for the full amount of the remittance, which demand was refused to the extent of the $445.55 applied on the Bair note. This action was then instituted and issue joined.

On the trial, at the close of plaintiff's testimony, the court held that plaintiff had "failed to prove a sufficient case for the jury," and ordered the entry of a judgment of nonsuit. From the judgment so entered plaintiff has appealed. The sole question presented is as to the sufficiency of the evidence to require its submission to the jury.

1. The complaint alleged that the cattle were sold without the consent of the mortgagee. Here there was a clear failure of proof, as Himsl testified that he gave his consent and it appears from the record that such consent was without an agreement that the proceeds be applied on the mortgage debt. Himsl testified that he "presumed" the proceeds would be remitted to him. For the purpose of this opinion we will assume that this testimony would have been sufficient to warrant a jury in finding that such was the intention of the parties.

The plaintiff asserts that the defendant had knowledge of the [1] mortgage; but it was not a creditor to whom the filing of the mortgage imported notice within the contemplation of section 8279, Revised Codes of 1921, as it was not seeking to enforce its claim against the mortgaged property. (*Isbell* v. *Slette,* 52 Mont. 156, 155 Pac. 503.)    However, as the case was taken from the jury, again we will assume that the jury would have been warranted in finding from the evidence that the defendant had actual knowledge of the mortgage. This knowledge would not alone be sufficient to render the defendant liable; the plaintiff was required to show that the defendant had knowledge of the origin of the funds deposited.

2. It is well settled that when money is deposited in a bank [2] to the credit of one of its debtors, without an express agreement to the contrary or direction to apply it to a specific purpose, the bank may apply the deposit to the satisfaction of a past-due indebtedness (3 R. C. L. 588, and First Supp., p. 858, Fourth Supp., p. 204; *Docking* v. *Commercial Nat. Bank,* 118 Kan. 566, 235 Pac. 1044), and this rule applies al-

though the deposit consists of the proceeds from the sale of mortgaged property, if no direction is given as to the disposition to be made of the funds and the bank has no knowledge of their origin or of another's claim thereto (*Tanner* v. *Lee*, 121 Ga. 524, 49 S. E. 592; *Smith* v. *Crawford State Bank*, 99 Iowa, 282, 61 N. W. 378; *First Nat. Bank* v. *Bernard* (Tex. Civ. App.), 30 S. W. 580; *Carr* v. *Brawley*, 34 Okl. 500, 43 L. R. A. (n. s.) 302, 125 Pac. 1131; *Maier* v. *Freeman*, 112 Cal. 8, 53 Am. St. Rep. 151, 44 Pac. 357; note in 36 A. L. R., p. 1379). Under such circumstances it is said that the mortgagee, by failing to take steps for the creation of a trust relation between himself and the third party, substitutes the mere promise of the mortgagor to apply the proceeds for his lien, and cannot look to the third party for his protection. This reasoning is in conformity with our maxim that "where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Sec. 8772, Rev. Codes 1921.)

It therefore becomes important to determine whether there is any evidence in the record on which the jury might properly have found that the defendant had knowledge of the origin of the funds deposited and that the plaintiff had a claim thereto.

3. Plaintiff's counsel state in their brief that they "think [3] the jury would be justified in drawing the inference" that defendant had such knowledge from the following facts: From 1914 to 1916 defendant bank held a mortgage on the Bair cattle and Bair Bros. did all their banking business with defendant and dealt with Ayers, who received the remittance and applied it on their debt in 1920; that in 1918 Bair told Ayers that he then had no security to give for a loan; that plaintiff's mortgage was filed in Custer county; and that Ayers knew that Clay, Robinson & Co. were livestock commission merchants.

As we view these bits of evidence, gleaned from the whole record, they could do no more than give rise to a conjecture

that Ayers might reasonably have concluded that the remittance was from the sale of cattle, and that there was a possibility or probability that such cattle might have been mortgaged; but the fact that the remittance was made without instruction or notice, and that, for a period of twenty days after its receipt, no claim was made upon the bank, would lead more strongly to the conclusion that the funds were derived from the sale of unmortgaged cattle. Even though Ayers knew in 1918 that all of the Bair cattle were then mortgaged and that the Bairs were seeking funds with which to buy more cattle, it does not follow that he knew, or should have known, in 1920 that all cattle then owned by Bair Bros. were mortgaged.

Knowledge of the origin of these funds was a most important issue in the case, and it was the duty of the plaintiff to produce [4] evidence thereof on which the jury could base a reasonably reliable conclusion, and on failure to. produce such evidence, or on the production of evidence so unsubstantial that the court should feel bound to set aside a verdict if one should be rendered, the court should grant a nonsuit. (*Escallier* v. *Great Northern R. Co.*, 46 Mont. 238, Ann. Cas. 1914B, 468, 127 Pac. 458; *Flynn* v. *Poindexter & Orr Livestock Co.*, 63 Mont. 337, 207 Pac. 341.) No jury would have been justified in making a finding on this important question on the unsubstantial evidence in the record on the subject, and, had the case been submitted to the jury and a verdict been rendered in favor of plaintiff, the court would have been bound to set it aside. It is therefore apparent that the court properly granted the motion for a nonsuit and caused the judgment appealed from to be entered.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.

Rehearing denied March 18, 1927.