(673 P.2d 448)
No. 55,060

FIRST NATIONAL BANK OF GAYLORD, GAYLORD, KANSAS, *Appellant,* v. LAURA M. AUTREY, *Appellee,* v. JAMES R. MARTIN, *Defendant.*

Opinion filed December 22, 1983.

*Michael S. Holland,* of Russell, for the appellant.

*Norman R. Kelly,* of Norton, Wasserman, Jones & Kelly, of Salina, for the appellee.

Before FOTH, C.J.; TERRY L. BULLOCK, District Judge, Assigned; and FREDERICK WOLESLAGEL, District Judge, Retired, Assigned.

BULLOCK, J.: James Martin sold his interest in the Bank of Gaylord. In connection with the sale, James contracted with the Bank to provide consulting services, for which James was to be paid $11,225 each year for three years. Thereafter, James fell upon hard times, both financially and domestically. As a result, James borrowed substantial sums from the Bank and "orally assigned" to the Bank his right to compensation under the consulting contract to secure the repayment of his borrowings. In

conformity with the "oral assignment," the Bank thereafter deposited all payments under the consulting contract into a new account at the Bank, but did not apply the proceeds to the loans. At the time of James' divorce, however, the trial court awarded the account in question (and the balance due under the contract) to James' wife Laura Martin (now Autrey).

The Bank then sued both James and Laura seeking the sums contained in the account. The trial court held the Bank's interest was an unperfected security interest under the Uniform Commercial Code and thus junior and inferior to Laura's claim as owner under the divorce decree. The Bank appeals, raising four issues:

1.   The Bank first contends that K.S.A. 84-9-104(*f*) excludes the assignment from coverage under Article 9 of the Uniform Commercial Code. This provision excludes a "transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract." The Bank's claim is that since it was to pay under the compensation contract and also to receive the payments via the assignment, this exclusion applies. The Kansas Comments to this section make clear, however, that this exception applies only to situations in which the assignor both delegates a duty to perform and assigns the right to payment to the same person. K.S.A. 84-9-104, Kansas Comment 1983, subsection (*f*). See also Clark, Law of Secured Transactions under the Uniform Commercial Code ¶ 1.8(6)[c] (1980). Here, Martin did not delegate a duty to perform and the Bank's contention lacks merit.

2.   The Bank next seeks to apply K.S.A. 84-9-104(*l*) which excludes transfers of deposit accounts from U.C.C. coverage. In the present case, there was no transfer of a deposit account. Martin assigned his rights in a contract. The payments he received were proceeds as defined by K.S.A. 84-9-306(1). The Bank attempts to rely on *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P.2d 316 (1970), which found the pledge of a savings account as security for another's loan did not come under the U.C.C. In that case, the account itself was the collateral rather than proceeds from the collateral. The Bank's reliance on *Walton* is misplaced.

The Bank also cites *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 635 P.2d 1248 (1981). In that case, rights to pro-

ceeds in a pending lawsuit were assigned as collateral for a loan and the assignment was held to have priority over a subsequent garnishment. The applicability of the U.C.C., however, does not appear to have been raised. The case has no application here.

In the case at bar the district court correctly determined that the assignment was a security interest, and that the U.C.C. applies.

3. The Bank next argues that if the U.C.C. does apply, its security interest became *perfected,* if not in the consulting contract per se, then at least in the proceeds of the contract when it took possession of the bank account into which those proceeds were deposited.

Our analysis on this point must begin with the observation that the Bank has not shown that the security interest represented by its "oral assignment" ever attached to the proceeds of the contract. Unless a security interest attaches, it is not enforceable against either the debtor or third parties. K.S.A. 84-9-203. Attachment occurs after three events take place: the secured party possesses the collateral or a security agreement has been executed, value has been given, and the debtor has rights in the collateral. K.S.A. 84-9-203(1) and (2). Here, the Bank claims it had possession of the account in which the proceeds were deposited. This account was not opened until February 1, 1979. At that time, James had no rights in the collateral; the proceeds from the contract had been awarded to Laura on September 22, 1978. There was no possession by the secured party while the debtor had rights in the collateral. Consequently, the Bank's security interest could not attach, and the security interest was not good against Laura. Having determined no security interest ever *attached* to proceeds, we need not consider contentions concerning perfection. K.S.A. 84-9-303.

The Bank makes no serious argument that it had a perfected security interest in James' right to payment under the consulting contract per se. Indeed it cannot. In order to perfect a security interest in contract rights, the filing of a financing statement is required. See K.S.A. 84-9-106; K.S.A. 84-9-302. The Bank concedes no filing was ever made and, accordingly, we conclude no perfected security interest ever arose as to contract rights.

4. The Bank's final argument is that its set-off right had priority over the divorce judgment. A bank may set off any

matured claim it has against a depositor. K.S.A. 9-1206. See also *Pessemier v. Zeller*, 144 Kan. 726, 728, 62 P.2d 882 (1936), quoting *Docking v. Commercial National Bank*, 118 Kan. 566, 567, 235 Pac. 1044 (1925). A bank cannot set off a debt until the debt is matured or the debtor insolvent. *Docking v. Commercial National Bank*, 118 Kan. at 568. In the present case, James' promissory note did not mature until July 17, 1980. On that date, the Bank would have had a right of set-off if James had been a depositor at the Bank. However, at that time Laura had been awarded the proceeds.

Affirmed.