In re Duane Alan CRIPPS, a/k/a C.A. Cripps, Duane Cripps, and Karen Louise Cripps, a/k/a Karen Cripps, Karen L. Cripps, formerly d/b/a Cripps and Cripps, Cripps Trucking and Readi-Hotshot, Debtors.

Bankruptcy No. BK-82-01775.

United States Bankruptcy Court,
W.D. Oklahoma.

July 19, 1983.

---

Amos Moses of Cate & Martin, Norman, Okl., for applicant.

Raymond D. Munkres, Midwest City, Okl., for trustee.

## MEMORANDUM OPINION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

This matter comes before the Court upon Petitioner's Application for Disclaimer of Assets. The trustee for the debtor estate has received certain accounts receivable of the debtors' business. Petitioner seeks to obtain these sums, alleging that she is a bona fide purchaser of the same. Trustee counters, by alleging that he is a superior lien creditor pursuant to 11 U.S.C. § 544, and therefore entitled to retain the funds.

The parties have stipulated to the following facts:

1. Jo Anne Brock ("Petitioner") entered into discussions with Duane Cripps ("Debtor") to purchase the accounts receivable of the debtors' business.

2. Petitioner agreed to purchase and Debtor agreed to sell certain accounts receivable of the business.

3. Debtor sold certain accounts receivable to Petitioner and executed a bill of sale.

4. The sale of accounts receivable was not a commercial financing transaction, nor a loan pledged as collateral.

5. Subsequent to purchase, Petitioner took physical possession of the invoices, or copies thereof, of the accounts receivable and began to collect monies due on said accounts.

6. The debtors subsequently filed this Chapter 7 Bankruptcy.

7. No U.C.C.—One filing of the accounts receivable was made by Petitioner.

At the outset we note that Petitioner makes various assertions to the effect that Debtor will not be able to prove either a preferential transfer pursuant to 11 U.S.C. § 547 or a fraudulent conveyance pursuant to 11 U.S.C. § 548. Since we dispose of this matter on other grounds, we need not address these issues.

A resolution of this case is provided for by Article 9 of the Uniform Commercial Code ("U.C.C."). In Oklahoma it is found at 12A O.S.1981 §§ 9–101 to 9–507.

Title 12A O.S. 1981 § 9–102 provides in pertinent part:

(1) Except as otherwise provided in Section 9–104 on excluded transactions, this Article applies:

. . . .

(b) to any sale of accounts or chattel paper.

The U.C.C. comment 2 to § 9–102 states that: "[A] sale of such property [accounts, contract rights and chattel paper] is therefore covered by [§ 9–102(1)(b) ] whether intended for security or not, unless excluded by § 9–103 or § 9–104. The buyer then is

treated as a secured party, and his interest as a security interest." None of the exclusions provided for in §§ 9–103 or 9–104 cover the sale in the case at bar.

■ "Security interest" is defined at 12A O.S. 1981 § 1–201(37) as follows: " 'Security interest' means an interest in personal property or fixtures which secures payment or performance of an obligation . . . . The term also includes any interest of a buyer of accounts or chattel paper which is subject to Article 9." Clearly then, the sale of accounts creates a security interest, a security interest which is governed by the provisions of U.C.C. Article 9.

The concept that Article 9 provisions apply to the sale of accounts has also been developed in case law. *Major's Furn. Mart, Inc. v. Castle Credit Corp.,* 602 F.2d 538 (3rd Cir.1979), *reprinted in* 26 U.C.C.Rep.Serv. (Callaghan) 1319 (U.C.C. Article 9 governs all transactions in accounts, including both sales of accounts and secured interests in accounts, and thus, by definition, an outright buyer of accounts has security interest in accounts which it purchases); *Valley Bank of Nevada v. City of Henderson,* 528 F.Supp. 907 (D.Nev.1981), *reprinted in* 33 U.C.C.Rep.Serv. (Callaghan) 382 (under U.C.C. § 9–102, any transaction intended to create a security interest in accounts and any sale of accounts falls within the scope of Article 9); *Daly v. Shrimplin,* 610 P.2d 397 (Wyo.1980), *reprinted in* 29 U.C.C.Rep. Serv. (Callaghan) 237 (sale of accounts receivable is a transaction subject to U.C.C. Article 9 and buyer's interests in accounts were security interests subject to the Code rules of priority); *Morrison v. Helms,* 28 U.C.C.Rep.Serv. (Callaghan) 172 (1979) (sale of accounts or contract rights would require U.C.C. filing to prevail against lien creditor). All of these cases dealt with provisions of U.C.C. Article 9 which substantially parallel those adopted in Oklahoma.

The import of this is that, should it be determined that Petitioner had not properly perfected her interest in the accounts receivable, then, upon the filing of bankruptcy, the trustee as a lien creditor will have a security interest superior to that of Petitioner, pursuant to 11 U.S.C. § 544, the pertinent part of which provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

The above language interplays with 12A O.S. 1981 § 9–301(1)(b), which states: "Except as otherwise provided in subsection (2), of this section, an unperfected security interest is subordinate to the rights of: a person who becomes a lien creditor without knowledge of the security interest and before it is' perfected." "A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes . . . a trustee in bankruptcy from the date of the filing of the petition . . . ." *Id.* at (3). By the terms of 11 U.S.C. § 544, the trustee has the rights of a hypothetical lien creditor; under U.C.C. § 9–301(1)(b) he accordingly prevails over Article 9 claimants whose interests are unperfected as of the filing of bankruptcy.

Perfection of a security interest under U.C.C. Article 9 may occur by one of two methods; either by filing or by possession. The manner of perfection is contingent upon the nature of the item sought to be perfected.

■ Perfection of a security interest in accounts, contract rights and general intangibles may only be effectuated by filing. *See* U.C.C. Comment 1 to 12A O.S. 1981 § 9–304, § 9–305. "Even if the creditor collects ledger cards, journals, computer print-outs, sales slips and any other items believed to represent receivables he will not by those acts perfect a security interest in

accounts." J. White and R. Summers, Uniform Commercial Code, 2d Ed. (1980) p. 934.

■ In the instant case, perfection would only have been accomplished by filing. Failing to do so, Petitioner, upon the filing of this bankruptcy, became subordinate to the rights of the trustee, pursuant to 11 U.S.C. § 544.

Petitioner, raising the issue of title passage, posits that the question of whether title passes is one of intent of the contracting parties, assuming apparently, that should title pass, the transaction is therefore taken outside the realm of U.C.C. requirements. Title, for purposes of defining rights of parties, is of little relative consequence under the U.C.C. *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210 (Okl. 1977) (construing 12A O.S. 1981 § 2–401(1)). We need not then concern ourselves with the issue of passage of title.

Petitioner then contends that a central issue to this case is a determination as to the true nature of the transaction involved. Petitioner urges that the true nature of the transaction in the case at bar is not one of a financing nature but one of an absolute and irrevocable assignment of the rights of the debtor. For this "nature of the transaction" argument, Petitioner cites *In re Hurricane Elkhorn Coal Corp. II*, 19 B.R. 609 (Bkrtcy.W.D.Ky.1982). *Elkhorn* did indeed deal with the distinction between an assignment as a sale and an assignment as a security device. The facts however, distinguish *Elkhorn* from the case at bar. As the Court in *Elkhorn* noted:

> Because the claim in the case at bar is to account proceeds, and because the *sale* of accounts is subject to the U.C.C. filing requirements, if the issue in this case were merely one of priority between the trustee and a creditor, it would be unnecessary to distinguish between the assignment as a sale and the assignment as a security device (emphasis in original).

*In re Hurricane Elkhorn Coal Corp. II, supra*, n. 24 at 616. As we have previously stated, the core issue in the instant case *is* one of priority between the trustee and a creditor.

Petitioner then cites several other cases, the more notable of which is *Spurlin v. Sloan*, 368 S.W.2d 314 (Ky.1963), *reprinted in* 1 U.C.C.Rep.Serv. (Callaghan) 402. *Sloan* dealt with the perfection requirements of an assignment of monies due under a contract. After quoting KRS 355.1–201(37), the Kentucky equivalent of 12A O.S. 1981 § 1–201(37), the *Sloan* court, addressing the obligation in question, stated: "We are of the opinion it was an 'Account', as defined by the above statute [355.1–201(37)], and as such *its absolute assignment for the payment of a past due obligation* was not a security transaction" (emphasis supplied). *Spurlin v. Sloan*, 368 S.W.2d at 316; 1 U.C.C.Rep.Serv. (Callaghan) at 405. The 1972 U.C.C. drafters approved the result in Comment 6 to § 9–104:

> 6. In general sales as well as security transfer of accounts, contract rights and chattel paper are within the Article (see § 9–102). Paragraph (f) excludes from the Article certain transfers . . . .

Title 12A O.S. 1981 § 9–104 provides:

> This Article does not apply:
>
> . . . .
>
> (f) to a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract of a assignee who was also to do the performance under the contract *or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness;* (emphasis supplied).

The facts in *Sloan* are clearly distinguishable from the case at bar. *Sloan* dealt with the assignment of monies owed in satisfaction of a preexisting debt. We are dealing in the instant case with a sale of accounts for value received. Accordingly, all of the contentions of the Petitioner must fail.

The trustee has requested that he be allowed to retain the accounts receivable erroneously paid to him. He does not petition the Court that he be entitled to obtain the

receivables which have previously been paid to Petitioner. We therefore do not address the question of whether proceeding under the aforementioned sections of the Bankruptcy Code and U.C.C. Article 9 would be effective in recovering the receivables obtained by Petitioner.

Accordingly, the receivables which have been paid to the trustee are the property of the debtor estate. Petitioner's Application to Disclaim is denied.

An appropriate Judgment will be entered separately.

Pursuant to B.R. 752 this Memorandum Opinion constitutes the findings of fact and conclusions of law.

Dated at Oklahoma City, Oklahoma this 19th day of July, 1983.