466 So.2d 1089 (1985)
SUN BANK, N.A., a National Banking Association, Appellant,
v.
PARKLAND DESIGN and Development Corporation, a Florida Corporation; Harvey Harbridge; John G. Harbridge and John A. Sutton, Individually and As Trustees; and Ocean Properties, Ltd., Appellees.
No. 83-787.
District Court of Appeal of Florida, Fifth District.
January 31, 1985.
*1090 James M. Talley and W. James Gooding, III, of Akerman, Senterfitt & Eidson, Orlando, for appellant.
Robert W. Smith of Pino, Knox & Smith, Orlando, for third-party appellee, Ocean Properties, Ltd.
No appearance for appellees Parkland Design, Harbridge, Harbridge and Sutton.
SHARP, Judge.
This case turns on the relative priority of an assignee of an account (Ocean Properties, Ltd.) and a garnishing judgment creditor (Sun Bank, N.A.). Sun Bank appeals from a final judgment awarding Ocean Properties, Ltd. (Ocean) the $14,634.48 fund being held by John A. Sutton, as Trustee. Sutton owed these funds to Parkland Design and Development Corporation (the assignor), as real estate commissions.
Ruling that the earned real estate commissions were not "accounts" controlled by Article 9 of Florida's Uniform Commercial Code (UCC), Chapter 679, Florida Statutes (1983), the trial court resolved this conflict on the basis of the common law rule found in Oper v. Air Control Products, Inc. of Miami, 174 So.2d 561 (Fla. 3rd DCA 1965), that "first in time as to notice to the debtor should prevail."[1] We reverse because we think the UCC applies to this transaction, and its application produces the opposite result.
Sutton owed Parkland $14,634.48 in real estate commissions pertaining to a sale of four parcels of land. The assignment was in writing, and it was dated January 26, 1983. It was delivered to Sutton the same day, together with a demand letter from *1091 Ocean's attorney to pay him directly.[2] No UCC filing pertaining to the assignment was made.
On January 25, 1983, an attorney for Sun Bank sent a message which Sutton received informing him that the Bank intended to garnish the commissions owed to Parkland. It had previously obtained a judgment against Parkland and others for $26,631.14. The writ of garnishment was served on Sutton on January 28, 1983.
The nature of the intangible in controversy in this case meets the UCC's definition of an "account" in all respects.
"Account" means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper whether or not it has been earned by performance."
§ 679.106, Fla. Stat. (1983). A commission due to a person because of services rendered in effecting a sale of real properties is not materially different than fees or commissions earned in other businesses or professions. They are treated as accounts. See In Re Uvesco, Inc., 13 U.C.C.Rep.Serv. (Callaghan) 957 (S.D.Fla. 1973); In Re Boughner, 8 U.C.C.Rep.Serv. (Callaghan) 144 (W.D.Mich. 1970); First National Bank of Gaylord v. Autrey, 9 Kan. App. 2d 96, 673 P.2d 448 (1983).
Further, it is clear that Article 9 encompasses not only financing types of assignments of accounts, but also absolute sales or transfers of accounts.[3] Section 679.102(1)(b), Florida Statutes (1983) provides:
"(1) Except as otherwise provided in s. 679.104 on excluded transactions, this chapter applies:
* * * * * *
(b) To any sale of accounts..." (Emphasis supplied).
Thus the fact that the assignment in this case was apparently an absolute one, and not made for security purposes, does not place it beyond the reach of Article 9.
Ocean argues that this case is excluded from Article 9 by virtue of section 679.104(8), Florida Statutes (1983), which provides that Article 9 does not apply to "a right represented by a judgment (other than a judgment taken on a right to payment which was collateral)... ." Ocean reasons that the assigned account is excluded because Sun Bank's garnishment claim originated as a judgment. This is clearly erroneous, since the intangible's nature, here, the account, determines the applicability of the exclusion. Parkland's right to the real estate commissions did not arise out of a judgment, based on the record before us. See Third National Bank in Nashville v. Par-Lac Corporation, 27 U.C.C.Rep.Serv. (Callaghan) 255 (Tenn. App. 1979); Estate of Hill, 27 Or. App. 893, 557 P.2d 1367 (1976). Therefore, this exclusion is not applicable.
Another exclusion from Article 9, which might have applied to this case, is section 679.104(6), Florida Statutes (1983), which provides an exemption for:
a sale of accounts ... as part of the sale of the business out of which they arose, or an assignment of accounts ... which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or in partial satisfaction of a pre-existing indebtedness... .
However, the record in this case fails to establish any of the specific facts needed to qualify the assignment for any of these exemptions. There was no sale of a business; the assignment was not a transfer to a collection agency; and no performance by the assignee was contemplated or required. Further, it was not established whether the *1092 assignment was of a single account to satisfy a prior debt. See In Re Cripps, 31 B.R. 541 (W.D.Okla. 1983).[4]
Professor Gilmore and other UCC authorities take the view that the assignments listed in section 679.104(6) are illustrative only of the kinds of assignments or sales of accounts intended to be excluded from Article 9. I.G. Gilmore, Security Interests in Personal Property, 308-9 (1965); Changes in Florida's UCC Article Nine: A Student Symposium, 9 Stetson L.Rev. 61 (1979). Based on guidance only from the general comments to section 679.104(6), courts should exclude, on a case-by-case basis, transfers which "by their nature, have nothing to do with commercial financing transactions." Gilmore, supra. Some courts have done this. However, the specific language of section 679.104(6) does not appear to allow for additional ad hoc exemptions[5] and such an approach would subject the priority and filing rules established by Article 9 to increasing uncertainty. See In Re Cawthorn, 36 U.C.C.Rep. Serv. (Callaghan) 1730 (M.D.Tenn. 1983); H. and Val. J. Rothschild, Inc. v. N.W. National Bank of St. Paul, 309 Minn. 35, 242 N.W.2d 844 (1976). Therefore, we conclude this transaction was not exempted from Article 9.
The next question necessary for resolution in this case is whether or not the assignment was perfected under Article 9 without filing. See Spurlin v. Sloan, 368 S.W.2d 314 (Ky. 1963); Lyon v. Ty-Wood Corporation, 212 Pa.Super. 69, 239 A.2d 819 (1968). Section 679.302(1)(c), Florida Statutes (1983) requires that a financing statement must be filed in order to perfect all assignments of accounts unless it is "an assignment which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor." § 679.302(1)(e), Fla. Stat. (1983). The 1972 Uniform Commercial Code comment to this provision explains that this is intended to save "from ex post facto invalidation casual or isolated assignments... . which no one would think of filing... ." 1972 Official Comment, Unif. Commercial Code § 9-302, 3 U.L.A. 369 (1981). This language is similar to the comment to the section 679.104(6) exemption, and Professor Gilmore's thesis that non-financing sales of accounts should be excluded from Article 9.
However, most courts in interpreting this provision, follow the language of the statute rather than the comment. They require a showing that the total amount of the assignor's accounts were of such a large amount as to make the assigned account relatively insignificant. See Consolidated Film Industries v. United States, 547 F.2d 533 (10th Cir.1977); In Re Sun Air International, Inc., 24 B.R. 135 (S.D. Fla. 1982); In Re Munro Builders, Inc., 20 U.C.C.Rep.Serv. (Callaghan) 739 (W.D. Mich. 1976); In Re Uvesco, Inc.; In Re Consolidated Steel Corporation, 11 U.C.C. Rep.Serv. (Callaghan) 408 (M.D.Fla. 1972); H. and Val. J. Rothschild, Inc. Predictably, courts have varied on their view of what percentage constitutes a transfer of a "significant" part of the assignor's outstanding accounts. Annot., 85 A.L.R.3d 1050 (1978).
Following the Code comment, a fewer number of courts have required a showing that the assignment was relatively isolated or rare on the part of the assignee, and that the assignee was sufficiently removed from commercial financing circles as to be excused from being unaware of any necessity to file a financial statement.[6] This test excludes from the filing exemption, banks *1093 or professional lenders, regardless how small the assigned account. Annot., supra, at 1054. See In Re Brent Explorations, Inc., 31 B.R. 745 (D.Colo. 1983). However, it does not appear to us any more certain than the other test.
Regardless which test is applied in this context, courts uniformly require the assignee in whose favor the exception operates to prove the basic facts sufficient to excuse him from the filing. If the record is silent on these matters, the issue is resolved against the assignee. George W. Ultch Lumber Company v. Hall Plastering, Inc., 477 F. Supp. 1060 (W.D.Mo. 1979); In Re Uvesco, Inc.; Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States, 130 Ariz. 110, 634 P.2d 398 (Ct. App. 1981); Architectural Woods, Inc.; Annot., supra, at 1054-55.
In this case, Ocean failed to establish whether Parkland had any other outstanding accounts at the time it assigned the one involved in this case to Ocean. This may have been its only account. Nor did Ocean establish the nature of its own business, or whether this was an isolated or rare transaction from its perspective. Again, for all the record shows, Ocean may have been in the commercial financing business. Therefore, for lack of proof, we must conclude the assignment involved in this case was unperfected because no financing statement was filed.
Under Article 9's priority rules, an unperfected assignee of an account is subordinate to a lien creditor "who has acquired a lien on the property involved by attachment, levy or the like... ." § 679.301(3), Fla. Stat. (1983). A garnishing judgment creditor qualifies as a lien creditor under section 679.301, upon service of process on the account debtor.[7] Since there was no showing that Sun Bank had knowledge[8] of the assignment of the account to Ocean Properties before it served Sutton with the writ of garnishment, it had a superior right to the account and it should have prevailed over Ocean's unperfected assignment of the account in dispute. Accordingly, the judgment appealed is
REVERSED.
FRANK D. UPCHURCH, Jr., J., concurs.
DAUKSCH, J., did not participate in oral argument and concurs in conclusion only.
NOTES
[1] Notice to the account debtor (Sutton) is relevant under Article 9 of the Uniform Commercial Code (UCC), Chapter 679, Florida Statutes (1983), if the question is whether the debtor can safely pay the assignor, or whether he must pay the assignee. See § 679.318, Fla. Stat. (1983); cf. Framingham Welding & Eng'g Corp. v. Bennie Cotton, Inc., 361 Mass. 866, 281 N.E.2d 236 (1972). It is not relevant under the Code if the issue is the relative priority of an assignee of an account against an attaching lien creditor. 6 Am.Jur.2d Assignments §§ 97, 483 (1963); 4 Fla. Jur.2d Assignments § 14 (1978); Restatement (Second) of Contracts § 341 comment a (1981).
[2] The trial court found that Attorney Smith's letter constituted a demand to pay to his trust account on behalf of Ocean.
[3] See Southern Rock, Inc. v. B & B Auto Supplies, 711 F.2d 683, 685 (5th Circuit 1983); In Re Cripps, 31 B.R. 541 (W.D.Okla. 1983); In Re Sun Air International, Inc., 24 Bankr. 135, 1369 (S.D. Fla. 1982); Sherburne Corp. v. Carter, 133 Vt. 411, 340 A.2d 82 (1975); Daly v. Shrimplin, 610 P.2d 397 (Wyo. 1980).
[4] The assignment of real estate commissions from Parkland to Ocean simply states that it is in consideration for the payment of $10.00 and other good and valuable considerations.
[5] See In Re Sun Air International, Inc., 24 B.R. 135 (S.D.Fla. 1982); Consolidated Film Industries v. United States, 403 F. Supp. 1279 (D.Utah 1975), rev'd, 547 F.2d 533 (10th Cir.1977).
[6] See In Re Barrington, 34 B.R. 55 (M.D.Fla. 1983); In Re First General Contractors, Inc., 12 U.C.C.Rep.Serv. (Callaghan) 762 (S.D.Fla. 1971); Architectural Woods, Inc. v. Washington, 88 Wash.2d 406, 562 P.2d 248 (1977).
[7] 13 Fla.Jur.2d Creditors Rights and Remedies §§ 115-117 (1979). Whether service of a writ of garnishment gives rise to a legal or equitable lien, it is sufficient to bring the funds into the hands of the court, just as would the physical seizure of a tangible res. 6 Am.Jur.2d Attachment and Garnishment, supra note 1, at § 485. Accordingly, a garnishor qualifies as a lien creditor under section 679.301(3), Florida Statutes (1983). See In re Matter of Equitable Dev. Corp., 617 F.2d 1152 (5th Cir.1980); In re Cripps; In re Monroe County Hous. Corp., Inc., 29 B.R. 686 (S.D.Fla. 1983); Miller v. Wells Fargo Bank Int'l Corp., 406 F. Supp. 452 (S.D.N.Y. 1975), aff'd, 540 F.2d 548 (2d Cir.1976); Peninsula State Bank v. United States, 211 So.2d 3 (Fla. 1968); Florida East Coast Ry. Co. v. Consolidated Eng'g Co., 95 Fla. 99, 116 So. 19 (1928); Pleasant Valley Farms & Morey Condensery Co. v. Carl, 90 Fla. 420, 106 So. 427 (1925); General Lithographing Co. v. Sight & Sound Projectors, Inc., 128 Ga. App. 304, 196 S.E.2d 479 (1973); City Collectors, Ltd. v. Maldonado, 50 Haw. 223, 437 P.2d 95 (1968); Vittert Constr. & Inv. Co. v. Wall Covering Contractors, Inc., 473 S.W.2d 799 (Mo. Ct. App. 1971); Elliot v. Regan, 274 Wis. 298, 79 N.W.2d 657 (1956). Compare Walker Bank & Trust Co. v. Smith, 88 Nev. 502, 501 P.2d 639 (1972).
[8] § 679.301(1)(b), Fla. Stat. (1983).