CONSOLIDATED FILM INDUSTRIES,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 75–1850.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 16, 1976.

Decided Jan. 6, 1977.

William Thomas Thurman of McKay, Burton, McMurray & Thurman, Salt Lake City, Utah (William T. Thurman of McKay, Burton, McMurray & Thurman, Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews Jr., Karl Schmeidler and George G. Wolf, Attys., Tax Div., Dept. of Justice, Washington, D.C., and of counsel, Ramon M. Child, U. S. Atty., Salt Lake City, Utah, on the brief), for defendant-appellant.

Before LEWIS, Chief Judge, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question in this case is whether the district court erred in granting relief to appellee enjoining the United States Internal Revenue Service from enforcing a levy. A more ultimate and specific issue is whether a financing statement is required under the pertinent Uniform Commercial Code provision, Utah Statutes, Section 70A–9–302(1)(e), Utah Code (1968), which section relates to requiring the filing of a financing statement in order to perfect security interests. This in turn is dependent upon construction of the exemption provision contained in the above cited provision of the Utah Uniform Commercial Code. This issue is the crucial one. If a financing statement is required, the appellee loses and the cause must be reversed. If appellee enjoyed an exemption from filing the statement, the Internal Revenue Service's levy is not enforceable and the judgment is affirmed. Section 70A–9–302(1)(e) provides in pertinent part as follows:

A financing statement must be filed to perfect all security interests except the following:

    .     .     .     .     .

(e) An assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor.

The government's levy was served on Inflight Motion Pictures, Inc., but appellee Consolidated Film Industries is the party in interest affected by it and so the suit is brought by it.

Due to the many participants and the several assignments the facts appear complicated, but they boil down to the described conflict as to whether a financing statement was required for perfection of the assignment and so the various formal legal motions simply provide a backdrop.

Consolidated Film Industries brought the suit for injunction against the United States to enjoin it from enforcing a levy served by the government on Inflight Motion Pictures, Inc. The trial court granted the relief and the government appeals. We reverse.

In July 1971, Interwest Film Corporation, which has its principal place of business in Utah, obtained ownership rights in a film "The RA Expedition." In order to acquire financing to enable it to market the film, Interwest entered into a sale and lease back, with option allowing it to repurchase the contract from Lowell Berry Foundation. Under the contract Interwest sold its property in the film to Lowell Berry for $375,000. Lowell Berry in turn granted back to Interwest exclusive marketing rights in the film until March 1, 1972. Interwest retained an option to repurchase the film for $562,500 in cash and in stock, payable in installments. The option to buy back was to be exercised by Interwest's paying Lowell Berry $93,750 in cash between February 1, 1972, and March 1, 1972. This was to be followed by the payment of installments until the full purchase price was completed. The completion date was March 1, 1973.

Interwest entered into a contract with the plaintiff-appellee, Consolidated Film Industries, for the production of several prints of the film and Interwest was obligated to pay $15,484 to Consolidated Film Industries to compensate for the making of the prints. Consolidated Film is now the successor in interest to Lowell Berry's rights.

In February 1972, Interwest exercised its option to repurchase by making the stipulated payment of $93,750 to Lowell Berry, but that was the first and last payment made on the repurchase obligation. On June 27, 1972, Interwest assigned to Lowell Berry its rights in a contract it had entered into with Inflight. This allowed Inflight to show the film aboard planes for a fee or royalty. This contract was thus security and amounts received under it were to reduce Interwest's obligation to Lowell Berry. Notice of the assignment to Lowell Berry was given to Inflight by Interwest. On July 27, 1973, Lowell Berry assigned its rights in the Interwest-Inflight contract to Consolidated Film Industries. No financing statement was filed with the Utah Secretary of State evidencing either assignment of the rights in the Interwest-Inflight contract.

In the same contract in which Interwest assigned to Lowell Berry its rights in the Interwest-Inflight contract, Interwest also assigned to Lowell Berry rights which it had in a contract with Bell & Howell and, in addition, there was a provision in which Lowell Berry agreed to allow Interwest to perform screenings of the film provided Interwest remitted daily to Lowell Berry certain percentages of the gross proceeds derived from such screenings.

On June 19, 1972, the United States, through the Internal Revenue Service, assessed against Interwest for unpaid federal employment taxes in the amount of $56,548.98. A further assessment was made against Interwest for unpaid federal employment taxes in the amount of $43,376.77 on September 25, 1972. Notice and demand for payment was made on Interwest on the dates of the respective assessments. Notice

of the first federal tax lien was filed September 1, 1972. On October 31, 1972, notice of levy was served on Inflight demanding that the latter pay the United States the money which it was obligated to pay on the Inflight-Interwest contract. Inflight failed to honor this levy and failed to pay the money over to Interwest, Lowell Berry or Consolidated Film Industries.

In the suit which was filed by Consolidated Film Industries (on July 30, 1973), in the United States District Court for the Central District of California, it alleged that its rights in the fund held by Inflight were superior to the rights of the United States by virtue of Interwest's assignment of its rights in the Interwest-Inflight contract to Consolidated Film Industries, the successor in interest of Lowell Berry. It sought to enjoin the United States from enforcing its levy against Inflight and to collect money damages as well. Consolidated Film Industries moved to transfer the case to the United States District Court for the District of Utah on November 26, 1973. The cause was transferred. On December 5, 1974, and on December 6, 1974, the United States and Consolidated, respectively, moved for summary judgment. The government's contention in the action was that Interwest's assignment of its contract rights to Lowell Berry constituted the transfer of a security interest which was subject to Article 9 of the Uniform Commercial Code, and that it had not been perfected because no financing statement had been filed. Consolidated claimed that Lowell Berry's acquisition of the Interwest-Inflight contract was a purchase transaction not protected by Article 9 and hence superior to the government's levy. Subsequently, Consolidated claimed that even if the assignment was a security interest it was subject to being perfected without filing pursuant to Section 9–302(1)(e), *supra.*

The trial court (Judge Anderson) held that the assignment was a security interest covered by Article 9, but further held that there was insufficient evidence to decide

whether it came within the filing exception contained in Section 9–302(1)(e).

After the mentioned decision of Judge Anderson, Consolidated Film Industries filed affidavits of Lowell Berry's executive vice-president together with an affidavit of Consolidated Film Industries' counsel. These showed that Lowell Berry had reason to believe that Interwest's accounts receivable and other contract rights were substantial in relation to its Inflight contract. The affidavits were, however, conclusory. In its order the district court acknowledged that there was no evidence as to the total amount of Interwest's outstanding contract rights at the time of the assignment, and noted the weakness of the affidavits filed. The court, nonetheless, ruled that the filing exception of Section 9–302(1)(e) was applicable. The court reasoned that Lowell Berry had no actual or constructive notice of the substantiality of Interwest's contract rights. A further reason for the court's holding that the exception applied to relieve appellee of filing was that the assignment was an isolated or casual transaction for Lowell Berry. Based on these holdings, the United States was enjoined from enforcing its levy against Inflight and it is this order which is before us for review.

Whether a financing statement was necessary depends on the meaning to be given to the words in the exemption provision, Section 70A–9–302(1)(e), which excepts an assignment that transfers an insignificant part of the outstanding accounts or contract rights of the assignor.

We are handicapped by not having more facts. We know that Interwest transferred its property in the film to Lowell Berry for $375,000. Interwest agreed to redeem the film from Lowell Berry for $562,500. Whether this constituted a significant part of the outstanding accounts of Interwest we do not know. The extent of our knowledge is that this was the only such account, for there is no evidence of any other.[1]

The trial court also found that the evidence was insufficient to support a finding

1. There is some vague information that Interwest had at least one other film; however, it is

inconclusive. See Affidavit of Walter M. Ross, Record on Appeal at 143.

536

on the issue. After the initial reaction of the trial judge, affidavits were filed, but these were also remarkably short of facts. The closest that Consolidated came to furnishing facts was its saying in the affidavit that Lowell Berry "had reason to believe" that Interwest's accounts receivable and other contract rights were substantial in relation to its Inflight contract. This statement falls short of establishing substantiality in relationship to the other rights of Interwest. It is nothing more than an opinion. If indeed facts existed, Lowell Berry ought to have produced them.

There are no Utah cases[2] which have construed the embattled exemption clause. So we must look elsewhere for enlightenment as to what constitutes a significant part of the outstanding accounts of the assignor and, therefore, is subject to the requirement of filing a financing statement. The trial court did not give principal effect to the working of the statute. Instead, it used what is known as the isolated or casual transaction test taken from the comments to Section 9–302(1), *supra*. The Comment says that the purpose of the exemption is to save from invalidation "casual or isolated assignments." The Comment goes on to say:

> \* \* \* some accounts receivable statutes were so broadly drafted that all assignments, whatever their character or purpose, fell within their filing provisions. Under such statutes many assignments which no one would think of filing might have been subject to invalidation. The paragraph (1)(e) exemption goes to that type of assignment. Any person who regularly takes assignments of any debtor's accounts should file.

We are unable to accept and use this Comment since it has never been adopted in Utah. We are unwilling to follow the Comment in preference to the words of the statute and particularly so in view of the fact that Utah has not chosen to adopt it.

The cases from other jurisdictions tend to hold that the party claiming the exemption has the burden of producing proof that brings his case within the scope of the exemption.

For example, in *Miller v. Wells Fargo Bank International Corp.*, 406 F.Supp. 452, 477 (S.D.N.Y.1975), the court held that a party claiming an exemption had failed to meet its burden of proof inasmuch as the assignment was substantial. It was for over one million dollars, which was approximately 20 percent of the assignor's accounts. *Cf., Standard Lumber Company v. Chamber Frames Inc.*, 317 F.Supp. 837 (E.D.Ark.1970), (16 percent of the accounts receivable was not a significant part).

The Wyoming Supreme Court in *Craig v. Gudim*, 488 P.2d 316 (Wyo.1971), held that the person wishing to rely on the exception under this provision has the burden of showing that the assignment did not transfer a significant part of the outstanding contract rights of the assignor. In that case, as in ours, the assignee showed only the amount of the assignment to it so the exemption was not applicable.

A similar result was reached in *Citizens National Bank of Okmulgee v. Chick Norton Buick Co.*, 8 U.C.C.Rep. 1389 (Okl.Ct. of App.1971). Here again it was said that the assignee must bear the burden of proving that the assignment did not constitute a significant part of the outstanding accounts or contract rights of the assignor. Since the assignee failed to show what part of the total accounts the assignment to it constituted, the court said that the exception could not be relied on. If the amount of the assignment in relationship to the total contract rights at the time was relatively small as in the case of *In re Consolidated Steel Corp.*, 11 U.C.C.Rep. 408 (M.D.Fla. 1972), the issue as to whether the assignment was a significant part of the outstanding accounts can be determined. We are aware of only one decision which has held that the burden of proof is on the adverse party rather than the assignee to prove transfer of a significant part of the outstanding accounts or rights of the assignor. *See In re Boughner*, 8 U.C.C.Rep. 144 (W.D.Mich.1970).

2. The law of Utah governs the case.

The appellee relies on Professor Gilmore's statement that the exemption provision is intended to protect from invalidation casual or isolated assignments which no one would think of filing. *See* Gilmore, Security Interests in Personal Property, Section 19.6 (1965). He states further that the provision is drafted so that no assignee, engaged in the regular course of financing will ever be tempted to rely on it in order to avoid a filing which ought to be made. *See also* Homer Kripke and Karl Felsenfeld, A Practical Approach to Article 9 of the U.C.C., 17 Rutgers L.Rev. 168, 190 (1962).

The problem with these learned commentaries is that they are out of harmony with the plain wording of the statute. The statutory requirement is specific that the assignment be an insignificant part of the outstanding accounts or rights of the assignor. The trial court also failed to give proper effect to this. The trial judge assumed that this could not be a practical commercial transaction. Our reaction is that the size of the transaction considered in and of itself does not suggest that this is a casual transaction or one which would ordinarily be exempt from filing. As to whether the assignment constitutes all of the outstanding accounts or rights of the assignor, we have to conclude that from all appearances this constituted most if not all of the accounts or rights of the assignor. If that is true, and there is no evidence from appellee to the contrary, it would make no difference that it may be an isolated transaction.

Accordingly, we must hold that the ruling of the district court, based as it is on a test which in the context of this case lacks applicability, is incorrect and that the judgment must be reversed. It is ordered that the cause be reversed and remanded with directions to vacate the judgment and enter judgment for defendant-appellant.