DISTRICT OF COLUMBIA, Appellant,

v.

THOMAS FUNDING CORPORATION, Appellee.

No. 89–744.

District of Columbia Court of Appeals.

Argued Oct. 4, 1990.
Decided June 27, 1991.

**1032**

Martin B. White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, Washington, D.C., for appellant.

Lee E. Landau, with whom Irwin S. Landau was on the brief, Rockville, Md., for appellee.

Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen, William S. Estabrook, and Howard M. Soloman, Dept. of Justice, and Jay B. Stephens, U.S. Atty., were on the brief, Washington, D.C., for amicus curiae, the U.S.

Before WAGNER, Associate Judge, NEWMAN, Senior Judge,* and BELSON, Associate Judge, Retired.**

BELSON, Associate Judge, Retired:

This is an appeal from the trial court's ruling that the assignee of an account had an interest in the account that took priority over an Internal Revenue Service lien on the account. We hold that the financing statement filed by the assignee was insufficient to perfect its security interest because it did not correctly set forth the name of the assignor taxpayer. Therefore, we reverse.

I.

Silverline Building and Maintenance Company contracted with the District of Columbia in December 1983 to perform janitorial services in two office buildings occupied by the District of Columbia. At approximately the same time, Silverline entered into a factoring arrangement with Thomas Funding Corporation in which Silverline assigned its right to payment pursuant to its contracts with the District to Thomas Funding in exchange for money Silverline received from Thomas Funding that Silverline used as working capital. Silverline notified the District of the assignment by letter and directed the District to make payments to Thomas Funding on Silverline's invoice to the District. This practice continued on a monthly basis through September 1984. In addition, Thomas Funding filed a financing statement with the Recorder of Deeds on January 4, 1984, covering "all now owned and hereafter acquired accounts, contract rights ... general intangibles of the debtor." The financing statement, however, inadvertently identified the debtor as "Silvermine Building Maintenance Co.," mistakenly substituting the letter "m" for the second letter "l" in the word "Silverline." Until October 1984, the District had paid Thomas Funding the amount due Silverline under the janitorial service contracts.

In April and May of 1984, the Internal Revenue Service made assessments against Silverline for unpaid federal income taxes totalling $22,370.19. On October 5, 1984, the IRS filed a notice of tax lien against Silverline with the Recorder of Deeds and served the District with notice of tax levy against any property or rights to property belonging to Silverline. At that time, the

* Judge Newman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on March 11, 1991.

** Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on June 1, 1991.

District owed $18,747 on the janitorial service contracts for work performed during September 1984. Instead of paying the amount owed under the contracts to Thomas Funding, the District paid this amount to the IRS on January 1, 1985.

Thomas Funding brought suit against the District for the amount due under the Silverline contracts, $18,747. The District asserted in its answer that its honoring of the IRS levy discharged it of any obligation to Thomas Funding, but nevertheless filed a third-party complaint against the United States. The trial court granted the United States's motion to dismiss because the nine-month statute of limitations for a suit for wrongful payment to the IRS had run. On cross motions for summary judgment, the trial court awarded Thomas Funding $18,-747, plus costs and post-judgment interest. The trial court found that Silverline had no property rights in the assigned accounts, but instead its rights had been transferred to Thomas Funding. Furthermore, the trial court concluded that the misspelling of the debtor's name in the financing statement was a minor error, which could not have misled the District because the District had actual notice of the assignment.

## II.

Before we can decide whether a tax lien against Silverline attached to accounts receivable due Silverline from the District, we must first determine whether Silverline owned the property or had rights to the property. 26 U.S.C. § 6321 (1988). Whether a taxpayer has an interest in property is determined by state law. *United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); *Aquilino v. United States*, 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960).

The law of the District of Columbia has recognized generally that parties to contracts may assign their contractual rights. *Flack v. Laster*, 417 A.2d 393, 399 (D.C.1980) ("The right to assign is pre-

sumed, based upon principles of unhampered transferability of property rights and of business convenience.") However, most assignments of accounts are governed by Article 9 of the District of Columbia's Uniform Commercial Code. D.C.Code § 28:9-101 to 28:9-507 (1981 & Supp.1990). The United States Court of Appeals for the District of Columbia Circuit, applying District of Columbia law, has held that when the Uniform Commercial Code does not apply to a particular situation, general contract principles govern. *G & R Corp. v. American Sec. & Trust Co.*, 173 U.S.App. D.C. 215, 222, 523 F.2d 1164, 1171 (1975); *see also Goldstein v. S & A Restaurant Corp.*, 622 F.Supp. 139, 142 n. 5 (D.D.C.1985); D.C.Code § 28:1-103 (1981). Thus, we must determine whether the assignment between Silverline and Thomas Funding is one included under Article 9 of the Code and, if so, what results from the application of Article 9 to the transaction involved here.

Thomas Funding contends that Article 9 does not apply to the transaction between it and Silverline because the transaction effected a sale of Silverline's entire interest in the accounts rather than the creation of a security interest. However, Article 9 applies not only to any transaction which is intended to create a security interest in accounts, but also to any sale of accounts.[1] D.C.Code § 28:9-102(1) (Supp.1990). The drafters of the Uniform Commercial Code expressed concern that transactions involving the sale of accounts would be indistinguishable from transactions involving accounts as security, and thus they included both types of transactions within the scope of Article 9:

An assignment of accounts ... as security for an obligation is covered by subsection (1)(a) [of section 9–102]. Commercial financing on the basis of accounts ... is often so conducted that the distinction between a security transfer and a sale is blurred, and a sale of [accounts] is therefore covered by subsec-

---

1. Article 9 defines an account as "any right to payment ... for services rendered which is not evidenced by an instrument ... whether or not

it has been earned by performance." D.C.Code § 28:9-106 (Supp.1990).

tion (1)(b) [of section 9–102] whether intended for security or not, unless excluded by Section 9–104. *The buyer then is treated as a secured party, and his interest as a security interest.*

UNIF. COMMERCIAL CODE § 9–102, 3 U.L.A. 76, 79 (1972) (official comment 2) (emphasis added). Certain transactions involving accounts are excluded from the scope of Article 9 because, by their nature, they have nothing to do with commercial financing transactions. UNIF. COMMERCIAL CODE § 9–104, 3 U.L.A. 143, 147 (1972) (official comment 6). Those transactions excluded from the scope of Article 9 are the sales of accounts as part of a sale of a business, an assignment of an account for the purpose of collection only, a transfer of a right to payment to one who is also obligated to perform under the contract, and a transfer of a single account in satisfaction of a preexisting debt. D.C.Code § 28:9–104(f) (Supp.1990).

The assignment of accounts in the case at hand was part of a factoring arrangement, a frequently used means of commercial financing that the drafters of the Uniform Commercial Code clearly contemplated would fall within the scope of Article 9. Because we find that the assignment of accounts is within the scope of Article 9, we must look to the provisions of Article 9 to determine the rights of the parties involved.

■ Under Article 9, the account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due has been assigned and that payment is to be made to the assignee. D.C.Code § 28:9–318(3) (Supp.1990). If thereafter the account debtor continues to pay the assignor, the debtor will remain liable to the assignee for the same amount. *See, e.g., International Harvester Co. v.*

*Peoples Bank & Trust Co.*, 402 So.2d 856, 861–63 (Miss.1981); *Boc Group, Inc. v. Katy Nat'l Bank*, 720 S.W.2d 229, 231 (Tex.App.1986). *See generally* Annotation, *Construction and Operation of UCC § 9–318(3) Providing that Account Debtor is Authorized to Pay Assignor Until He Receives Notification to Pay Assignee,* 100 A.L.R.3d 1218 (1980). The obligation of the account debtor is not discharged by the "wrongful payment" to the assignor. Clearly, as between the assignor and the assignee, the assignor has no right to payment from the account debtor once notice is given and a demand is made. D.C.Code § 28:9–318(3).

■ The District, in this case, received notice of the assignment and received a request that payment be made to Thomas Funding instead of Silverline. Consequently, under the provisions of Article 9, Silverline would have no right to payment from the District. *See id.*

■ Thomas Funding relies on section 28:9–318(3) and the common law of assignments to support its assertion that Silverline retained no property interest in the accounts. Thomas Funding contends that if the District had made payment to Silverline instead of Thomas Funding, the District doubtlessly would remain liable to Thomas Funding. Furthermore, Thomas Funding asserts, the IRS must step into the shoes of the taxpayer, Silverline, to determine what property interest of Silverline the IRS can attach. Thus, Thomas Funding concludes, if the IRS is placed in the shoes of the assignor, there is no property of Silverline's in the assigned accounts to which the IRS could attach a tax lien.[2] Under this reasoning, the District would remain liable to Thomas Funding even though it paid the IRS, which assertedly stepped into the shoes of Silverline.

---

**2.** The Mississippi Supreme Court held in *International Harvester Co., supra,* that the assignor of accounts retained no property interest in the assigned accounts in which the IRS could attach a tax lien. 402 So.2d at 864. The Mississippi court relied on the fact that the assignor had delivered the underlying contract to the assignee along with the assignment and that the assignee's possession of the underlying contract

perfected its security interest in the assigned accounts. *Id.* at 865. We note that comparable facts are not present in the case at hand, but add that, as we explain below, our analysis of District of Columbia law would lead us to a contrary result where only accounts are involved and the secured party has failed to file a financing statement.

We find this analysis too facile because the IRS did not simply step into the shoes of Silverline. As a third party, its rights are not identical with those of the assignor. We must determine whether the Article 9 notification to the account debtor, the District of Columbia, of the assignment is sufficient to transfer the assignor's entire property interest in the accounts as they come into existence so that the accounts never become subject to other creditors' claims. Generally, Article 9 focuses on the rights and duties of the secured party, the debtor, and third-party creditors rather than on the question of who holds title to the collateral. It is of pivotal significance that Article 9 grants rights to a third-party lien creditor in the collateral securing an *unperfected* security interest regardless of who holds title to the collateral. D.C.Code § 28:9–301(1)(b) (Supp.1990); *see also United States v. Trigg*, 465 F.2d 1264, 1268 (8th Cir.1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). As a consequence, until the assignee (here Thomas Funding) perfects its security interest pursuant to Article 9, the assignor retains a property interest in the assigned accounts in the sense that Article 9 permits the assignor's lien creditors to satisfy their judgment out of the assigned accounts. D.C.Code § 28:9–301(1)(b); *see also Nevada Rock & Sand Co. v. United States*, 376 F.Supp. 161, 170–72 (D.Nev.1974) (assignor taxpayer has a property right in assigned accounts which the IRS can attach by tax lien where assignee of taxpayer has not yet perfected its security interest).

■ To be a perfected security interest, the security interest must have attached and the secured party must have taken the applicable steps required for perfection. D.C.Code § 28:9–303(1) (1981). Attachment of the interest generally occurs when the debtor has signed a security agreement which contains a description of the collateral, the secured party has given value, and the debtor has rights in the collateral. D.C.Code § 28:9–203(1) (Supp.1990). Perfection generally may be achieved by either filing a financing statement or obtaining possession of the collateral. D.C.Code §§ 28:9–302(1), 28:9–304(1), 28:9–305 (Supp.

1990). However, perfection of an interest *in accounts* must be achieved by filing. D.C.Code § 28:9–302(1) (Supp.1990); UNIF. COMMERCIAL CODE § 9–302, 3 U.L.A. 364, 369 (1972) (official comment 5) ("filing is thus the only means of perfection contemplated by this Article"). The drafters of the Uniform Commercial Code noted that "the filing requirement of this section applies both to sales [of accounts] and to transfers thereof for security." UNIF. COMMERCIAL CODE § 9–302, 3 U.L.A. at 369 (official comment 5). In fact, the drafters further commented that "[a]ny person who regularly takes assignments of any debtor's account should file" to perfect his or her security interest. *Id.* It follows from the foregoing that an assignment that falls within the scope of Article 9 which is not perfected leaves a property interest in the assignor against which a third party lien creditor, such as the IRS, can attach a lien. *See Trigg, supra,* 465 F.2d at 1268–69; *Nevada Rock & Sand Co., supra,* 376 F.Supp. at 172; *Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States,* 130 Ariz. 110, 112, 634 P.2d 398, 400 (1981).

■ In this case, Thomas Funding filed a financing statement that was intended to cover the accounts of Silverline. However, the financing statement named the debtor as "Silvermine Building Maintenance Co." Thus, we must determine whether Thomas Funding obtained a perfected security interest by filing a financing statement that misspelled Silverline's name.

Article 9 adopts a system of "notice filing," requiring only a simple notice, the financing statement, to be filed, rather than the security agreement itself. D.C.Code § 28:9–402(1) (Supp.1990); *see* UNIF. COMMERCIAL CODE § 9–402, 3A U.L.A. 45, 51 (1972) (official comment 2). The Recorder of Deeds is required to index the financing statement according to the name of the debtor. D.C.Code § 28:9–403(4) (Supp.1990). Thus, a prime requisite of the sufficiency of a financing statement is that it set forth the debtor's name. D.C.Code § 28:9–402(1). Whether a financing statement that misspells the debtor's name sub-

stantially complies with this requirement depends upon whether the misspelling is a minor error which is not seriously misleading. D.C.Code § 28:9–402(8) (Supp.1990). As the drafters of the Uniform Commercial Code noted, section 9–402(8) "is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." UNIF. COMMERCIAL CODE § 9–402, 3A U.L.A. at 54 (official comment 9). With this in mind, we must look to the facts of this case to determine whether the misspelling of the debtor's name in this case is so seriously misleading that it renders the financing statement ineffective.

An indication of the seriousness of the misspelling here is the fact that the Recorder of Deeds certified that no financing statement against Silverline had been filed. The Recorder of Deeds, or any other person searching the records, likely would not have found the financing statement filed by Thomas Funding because of the misspelling of Silverline's name. There is some chance that because "Silvermine" would be near "Silverline" in alphabetical order, a person searching the records would happen upon it. But it would not be obvious to the beholder that "Silvermine" is merely a misspelling of Silverline. We are persuaded that a financing statement filed under the name "Silvermine" essentially fails to give notice of the security interest in the accounts receivable of Silverline. Moreover, the fact that the District had actual notice of the assignment of the accounts has no bearing on whether the financing statement is effective in this case because our focus is upon whether Thomas Funding perfected its interest to preclude other creditors, e.g., the IRS, from stepping in front of it.

We hold that the misspelling of Silverline's name as "Silvermine" is an error so seriously misleading as to render the financing statement ineffective for purposes of putting a third party on notice that Silverline had given Thomas Funding a security interest in the accounts. Other

courts have ruled similarly. *See Reisdorf Bros., Inc. v. Clinton Corn Processing Co.*, 130 A.D.2d 951, 951, 516 N.Y.S.2d 375, 375 (4th Dep't 1987) (misspelling of debtor's own name and his d/b/a name was so seriously misleading as to render financing statement ineffective); *Bank of North America v. Bank of Nutley*, 94 N.J.Super. 220, 224–27, 227 A.2d 535, 538–39 (1967) (financing statement misspelled Kaplan as Kaplas); *In re Brawn*, 6 U.C.C.Rep.Serv. 1031, 1037–39 (Bankr.D.Me. Sept. 18, 1969) (financing statement misspelled Brawn as Brown); *National Cash Register Co. v. Valley Nat'l Bank*, 5 U.C.C.Rep.Serv. 396, 396–97 (N.Y.Sup.Ct. June 3, 1968) (financing statement misspelled Borgwald as Boywald). *But see Beneficial Finance Co. v. Kurland Cadillac–Oldsmobile, Inc.*, 57 Misc.2d 806, 807–08, 293 N.Y.S.2d 647, 649 (N.Y.Sup.Ct.1968) (financing statement misspelled debtor's first name as Shelia instead of Sheila was obviously a minor error), *rev'd on other grounds*, 32 A.D.2d 643, 300 N.Y.S.2d 884 (2d Dep't 1969). *See generally* Annotation, *Sufficiency of Designation of Debtor or Secured Party in Security Agreement or Financing Statement Under UCC* § 9–402, 99 A.L.R.3d 478, 534–36 (1980).

Because we conclude that the misspelling renders Thomas Funding's security interest unperfected, we hold that Silverline retained an interest in the accounts in the sense that any lien creditor of Silverline could attach its lien to the assigned accounts to satisfy its judgment.

## III.

Once it has been determined that state law creates a sufficient property interest in the taxpayer against which the IRS can attach a lien, state law becomes inoperative and federal law dictates the priority of the federal tax lien over other property interests. *National Bank, supra*, 472 U.S. at 722, 105 S.Ct. at 2925. Under federal law, the general rule is that a federal tax lien that is first in time is first in right. *Trigg, supra*, 465 F.2d at 1269. Thus, a federal tax lien takes priority over a state-created lien unless the state-created

lien is perfected before the federal tax lien arises.[3] *Id.* However, there are several exceptions to this general rule. For example, one who purchases a taxpayer's property or obtains a security interest therein takes priority over the tax lien unless the tax lien is filed. 26 U.S.C. § 6323(a) (1988); *see also Nevada Rock & Sand Co., supra,* 376 F.Supp. at 168–71. Thomas Funding contends that it is a purchaser of the accounts or, in the alternative, a holder of a security interest in the accounts and that this interest arose before the IRS filed the federal tax lien.

■ Under the applicable statute, a purchaser is defined as "a person who for adequate and full consideration in money or money's worth, acquires an interest (*other than a lien or security interest*) in property which is *valid under local law against subsequent purchasers without actual notice.*" 26 U.S.C. § 6323(h)(6) (1988) (emphasis added). A purchaser of accounts rarely will qualify as a purchaser under the statute because a purchaser of accounts under District of Columbia law obtains a *security interest* in the accounts pursuant to Article 9 of the Uniform Commercial Code. D.C.Code § 28:9–102(1), 28:1–201(37) (Supp.1990). Furthermore, the purchaser of accounts must file a financing statement to protect its interest in the accounts from subsequent purchasers without actual notice. D.C.Code § 28:9–302(1); UNIF. COMMERCIAL CODE § 9–302, *supra,* 3 U.L.A. at 369 (official comment 5). Thus, Thomas Funding does not qualify as a purchaser as defined by 26 U.S.C. § 6323(h)(6) because it acquired a security interest and it failed to file an effective financing statement to protect its interest against subsequent purchasers without actual notice.

■ Similarly, Thomas Funding fails to qualify as a holder of a security interest, defined as:

any interest in property acquired by contract for purpose of securing payment or performance of an obligation.... A security interest exists at any time (A) if, at such time ... the *interest has become protected under local law against a subsequent judgment lien* arising out of an unsecured obligation.

26 U.S.C. § 6323(h)(1) (emphasis added). Under District of Columbia law, to protect a security interest in accounts against judgment lien creditors, the secured party must perfect its security interest by filing a financing statement. D.C.Code § 28:9–301(1)(b), 28:9–302. Although Thomas Funding filed a financing statement, the financing statement misspelled Silverline's name, making it so seriously misleading to be ineffective in perfecting Thomas Funding's security interest. *See supra* page 1036. Thus, Thomas Funding is not a holder of a security interest as defined above.

■ In this case, the IRS filed its tax lien on October 5, 1984. At that time, Thomas Funding merely held an unperfected security interest in Silverline's accounts due from the District. Thus, the federal tax lien had priority over Thomas Funding's security interest. As a consequence, the District properly paid the amount due under the September accounts of Silverline to the IRS even though the District had actual notice of the assignment of the accounts to Thomas Funding.[4] *See* 26 U.S.C. § 6332(a) (1988).

■ An additional basis for the conclusion we reach is that federal case law holds that a party honoring an IRS levy is protected from a third party claiming an interest in the property surrendered.[5] *Commonwealth of Kentucky v. Laurel County,* 805 F.2d 628, 635–36 (6th Cir.1986) ("Case law clearly holds that a payment made by a custodian of property in which the taxpayer has an interest pursuant to an

---

**3.** 26 U.S.C. § 6323 (1988), discussed below, defines when a lien is "perfected" for this purpose.

**4.** If an assignor debtor is unsure who should receive payment, the assignee or the IRS, it is prudent to interplead both parties. *See, e.g., Valley Bank v. City of Henderson,* 528 F.Supp.

907 (D.Nev.1981); *Nevada Rock & Sand Co., supra,* 376 F.Supp. 161; *Black, Robertshaw, Frederick, supra,* 130 Ariz. 110, 634 P.2d 398.

**5.** This is the position that the United States asserts in its *amicus curiae* brief.

IRS administrative levy is a valid defense to a subsequent action by a third party claiming an interest in the property."), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 36 (1987); *see also* 26 U.S.C. § 6332(e) [6] (surrender by a custodian of the taxpayer's property upon which the IRS has made a demand pursuant to a levy discharges the custodian from any obligation or liability to the taxpayer or any other person with respect to such property). The federal cases suggest that a contrary result would be unfair for two reasons. One, the custodian is under a duty to surrender the property pursuant to 26 U.S.C. § 6332(a). *Laurel County, supra,* 805 F.2d at 635; *DiEdwardo v. First Nat'l Bank,* 442 F.Supp. 499, 500 (E.D.Pa.1977); *Determan v. Jenkins,* 111 F.Supp. 604, 605 (N.D.Ga.1953). Two, a custodian served with a notice of levy has only two defenses for failure to comply with the demand: that it is not in possession of the property of the taxpayer or that the property is subject to a prior judicial attachment or execution. *National Bank of Commerce, supra,* 472 U.S. at 721–22, 727, 105 S.Ct. at 2924–25, 2927–28 (fact that another party may have a competing claim is not a legitimate statutory defense for failing to comply with an IRS demand); *Laurel County, supra,* 805 F.2d at 635–36. As we explained above, the District was in possession of property of Silverline when the IRS filed its tax lien. Moreover, there was no prior judicial attachment or execution. Thus, the District is not liable to Thomas Funding for the amount owed under the Silverline September accounts.

*Reversed.*

**6.** Congress recently amended this section to expressly state the holding of the federal cases that payment by a custodian pursuant to a demand made by the IRS discharges the custodian from any liability to any other person with respect to that property. Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, § 1015(t)(1), 102 Stat. 3342, 3573.