**In re VIGIL BROS. CONSTRUCTION, INC., Debtor.**

**Bankruptcy No. 90–11948–PHX–SSC.**

United States Bankruptcy Court,
D. Arizona.

April 19, 1995.

---

Charles L. Firestein, Law Offices of Charles L. Firestein, P.C., Phoenix, AZ, for CECO.

David Damore, Vogel & Damore, Scottsdale, AZ, for trustee.

## AMENDED MEMORANDUM DECISION

SARAH SHARER CURLEY, Bankruptcy Judge.

### *PROCEDURAL HISTORY*

This matter comes before this Court on an objection to proof of claim filed by James D. Fox, the Chapter 7 Trustee (hereinafter "Trustee"), on January 14, 1993. On February 16, 1993, Concrete Equipment Co., Inc. (hereinafter "CECO") filed its response. At the May 26, 1993 hearing on the objection to proof of claim, this Court ordered the parties to file simultaneous memoranda of law by July 15, 1993. This Court further ordered the parties to file any responsive memoranda of law on or before July 29, 1993.

On August 17, 1993, CECO and the Trustee filed a stipulation as to the briefing schedule. On August 20, 1993, a motion to continue the oral argument set for August 30, 1993 was filed. The Court granted the stipulation as to the briefing schedule and set a continued hearing for November 4, 1993.

On November 4, 1993, the Trustee and CECO filed a second stipulation as to the briefing schedule and a joint motion to continue the hearing set for November 4, 1993.

On November 5, 1993 this Court granted the stipulation and entered an order continuing the hearing to January 27, 1994. The January 27, 1994 hearing was again continued. On February 16, 1994, this Court entered an order granting the stipulation concerning the briefing schedule and noted that no further extensions would be granted. This Court further set a continued hearing for April 4, 1994.

On March 4, 1994, the Trustee filed his opening brief. CECO filed its responsive brief on March 21, 1994 and the Trustee filed his reply brief on March 28, 1994. The Court initially conducted a hearing consisting solely of oral argument on April 4, 1994. The Court set forth the remaining issue upon which CECO would have the opportunity to present evidence. This Court set a trial on the remaining issue for July 5, 1994.

The trial was continued from July 5, 1994 to August 2, 1994 because a witness did not appear. The joint pretrial statement was filed by the parties on July 15, 1994. On August 2, 1994, the trial was held. Only Mr. Vigil testified before the Court. The Court then deemed this matter under advisement.

This constitutes this Court's findings of fact and conclusions of law pursuant to Rule 7052, Rules of Bankruptcy Procedure (hereinafter "RBP"). This is a "core" proceeding and this Court has jurisdiction over this matter. 28 U.S.C. §§ 1334 and 157.

### *ISSUE*

The issue before this Court is narrow; that is, whether the Debtor transferred an insignificant portion of its accounts receivable to CECO, so that a financing statement need not be filed by CECO to obtain and maintain a perfected security interest in the account receivable.

### *ANALYSIS*

On June 25, 1989, the Debtor and CECO executed a promissory note pursuant to which the Debtor agreed to pay CECO the sum of $49,385.56, with interest to accrue at a certain prime rate plus three percent (3%)

per annum.[1] Simultaneously, the Debtor assigned to CECO a "sum not to exceed $49,-385.56 of assignor's interest in a debt due to it [Debtor] from Joe E. Woods, Inc." as security for the repayment of the promissory note.[2] The Assignment further stated that the Joe E. Woods, Inc. receivable (hereinafter "the Woods Receivable") arose from work performed at Arizona State University.[3] No financing statement was filed by CECO.

This Court notes that neither party was able to produce the books and records of the Debtor. In fact, this Court was informed that the books and records of the Debtor for the relevant time period could not be located. Thus, this Court must rely on the testimony and exhibits presented at the trial.

Mr. Vigil testified that he worked "in the field" and was not in charge of the books and records of the Debtor. However, Mr. Vigil did state that he received the Debtor's financial statements on an annual basis. Mr. Vigil apparently last thoroughly reviewed the financial statements of the Debtor around January, 1989. Mr. Vigil subsequently resigned from the Debtor in November, 1989.

Mr. Vigil testified as to the business operations of the Debtor. He stated that at one point in time, the annual gross revenues of the Debtor were between $3 million to $4 million. At one point the Debtor had approximately 80 employees, of which between twelve to fifteen employees were long-term.

Mr. Vigil further testified that by 1989, the operations of the Debtor had changed. As projects were completed, the Debtor laid off employees and did not enter bids on any new construction projects. Mr. Vigil further stated that by June, 1989, the Debtor lacked sufficient funds to pay CECO; thus, the Debtor assigned the Woods Receivable to CECO.

Mr. Vigil testified that in early 1989, the following amounts were owed to the Debtor on various contracts:

| Contract Name | Amount owed on the Contract |
| --- | --- |
| Dillards Department Store | less than $100,000 |
| 18th & Sharon | less than $100,000 |
| Arizona State University | $90,000 |
| Luke Air Force Base | paid in full |
| 7th & Dunlap | paid in full |
| North Mountain Park | paid in full |
| Troon Village | paid in full |
| Arizona State University Research Building | paid in full |

Mr. Vigil then estimated that approximately $125,000 was owed on a variety of contracts as of June 25, 1989. Mr. Vigil stated that approximately $90,000 was owed to the Debtor on the Arizona State University project and $35,000 was owed to the Debtor on other miscellaneous contracts; however, Mr. Vigil was not able to reconcile this amount of $125,000 with the amounts indicated as being owed on the contracts listed above. The Court concludes that $125,000 was due and owing on a variety of contracts as of June 25, 1989.

Mr. Vigil testified as to his best estimate as to the aggregate amount of accounts receivable still due and owing to the Debtor at the time the Woods Receivable was assigned to CECO. However, this Court does have concerns as to the accuracy of the information provided by Mr. Vigil, since he was not in charge of the books and records of the Debtor, did not review the books and records of the Debtor on a more frequent basis than annually, and was not able to reconcile his estimate of the accounts receivable outstanding as of June 25, 1989 with his estimate of the outstanding accounts receivable on the aforementioned contracts.

To resolve this dispute, the Court must analyze Arizona law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). This Court notes that CECO, as the assignee, has the burden of proof to show that it was not required to file a financing statement in order to have a properly perfected security interest in the Woods Receivable. See *Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States*, 130 Ariz. 110, 634 P.2d 398, 402 (App.1981) (citing to *Consol. Film Indus. v. United States*, 547

---

1. See Movant's Exhibit A.

2. See Movant's Exhibit B.

3. See Movant's Exhibit B.

F.2d 533 (10th Cir.1977) and *Architectural Woods, Inc. v. State*, 88 Wash.2d 406, 562 P.2d 248 (1977)).

■ Under *Ariz.Rev.Stat. Ann.* § 47–9302 (West 1988 and Supp.1994), a financing statement does not need to be filed in order to perfect a security interest when an insignificant portion of the outstanding accounts are assigned by the assignor.[4] An account is defined as being the "right to payment for ... services rendered which is not evidenced by an instrument[5] or chattel paper[6] whether or not it has been earned by performance." *Ariz.Rev.Stat.Ann.* § 47–9106 (West 1988 and Supp.1994). No evidence has been presented which reflects that the Woods Receivable constitutes an instrument or chattel paper. The Woods Receivable is an account granted as security to repay the indebtedness due and owing from the Debtor to CECO.

Arizona case law provides some guidance on the issue of whether a significant portion of a debtor's accounts receivable has been transferred. In *Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States*, 130 Ariz. 110, 634 P.2d 398, 403 (App.1981), Regal and Kealy had entered into two construction contracts. *Id.* at 111, 634 P.2d at 399. After a dispute arose, the contracts were terminated. Kealy determined it owed Regal approximately $11,000 for work performed and deposited that sum with the State Court. Regal subsequently went out of business, and the Kealy account was assigned to Black, Robertshaw for legal services rendered and to be rendered. The assignment documents were dated January 6, 1976. Black, Robertshaw did file a financing statement, but this document was filed two hours *after* the IRS had filed its tax lien. The *Black* court was asked to determine the priority of the security interest of Black, Robertshaw and the Internal Revenue Service. *Id.*, 130 Ariz. at 111, 634 P.2d at 399.

In *Black*, the court stated that there were three different tests for determining what was a "significant portion" of the accounts receivable:

(1) a percentage of accounts test;

(2) a "casual and isolated transaction" test; and

(3) a combination of (1) and (2).

*Id.* at 112–13, 634 P.2d at 401–02. The *Black* court concluded that it did not need to select a specific test for Arizona, because Black, Robertshaw failed to provide the requisite support for its motion for summary judgment. *Id.* at 114, 634 P.2d at 402.

Although the *Black* court did not determine which test was appropriate, it found the analysis set forth by the commentator, White & Summers, *Uniform Commercial Code* § 23–8 (1972), to be the most persuasive. *Black*, 130 Ariz. at 114, 634 P.2d at 401. White & Summers stated that although there was not a case which gave a clear picture as to the percentage which is considered to be significant, the percentage of accounts test

**4.** A.R.S. § 47–9302(A)(5) provides:

 **A.** A financing statement must be filed to perfect all security interests except the following:

 * * * * * *

 5. An assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor.

**5.** A.R.S. § 47–9105(A)(11) defines an instrument as:

 a negotiable instrument (defined in § 47–3104), or a certificated security (defined in § 47–8102), or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment.

 The only change made to § 47–9105(A)(11) by the 1990 Amendment, after the events described herein took place, was to add the word "certificated."

**6.** A.R.S. § 47–9105(A)(3) defines chattel paper as:

 a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper.

 The 1990 Amendments to the Arizona *Uniform Commercial Code* did not alter § 47–9105(A)(3).

was the preferred method. *Id.* at 113, 634 P.2d at 401.[7]

 The *Black* court further cited with approval the following language set forth in the White & Summer analysis:

> This seems to us an appropriate place to exercise our bias in favor of certainty. If the Court defines "significant" in terms of a percentage of the total accounts of the assignor, we can hope for the cases to produce a comparatively certain and reliable rule on which creditors and debtors can rely. If, on the other hand, we leave it to the courts to determine which sales are casual and isolated and which are not, we suspect that the process could go on for the rest of this century and part of the next without ever producing a rule on which a lawyer could rely.

*Black,* 130 Ariz. at 113, 634 P.2d at 401 (citing White & Summers, *Uniform Commercial Code* § 23–8 (1972)). In considering the percentage of accounts test, there is no information beyond the testimony of Mr. Vigil and the exhibits admitted into evidence for this Court to consider.

Here, Mr. Vigil testified that his best estimate as to the total outstanding accounts receivable as of June 25, 1989 was the sum of $125,000. Mr. Vigil testified that the $125,000 was comprised of $90,000 due from Arizona State University and $35,000 from miscellaneous accounts. The Court rejects as not credible Mr. Vigil's efforts to prove somehow that the Debtor's outstanding accounts were greater than $125,000. His testimony was vague and indefinite, and his recollections of the Debtor's business operations of nearly five years ago do not support any greater amount being accorded to the aggregate amount of Debtor's outstanding accounts receivable as of June, 1989. Based upon Mr. Vigil's estimate of the total accounts receivable owed to the Debtor as of June 25, 1989, the Debtor assigned forty

percent (40%) of its total accounts receivable to CECO at the time of the assignment of the Woods Receivable.[8] The Court concludes that the Debtor's assignment of 40 percent (40%) of its accounts receivable to CECO was significant.

This Court concludes that CECO has not met its burden of proof in showing that only an insignificant portion of the accounts receivable of the Debtor were transferred to CECO. Therefore, CECO was required to file a financing statement to perfect its security interest in the Woods Receivable to support its claim that it was a secured creditor of the Debtor. Since CECO did not file a financing statement, CECO is an unsecured creditor of the Debtor. The Trustee's objection to the CECO claim must be sustained.

---

7. In *Standard Lumber Co. v. Chamber Frames, Inc.,* 317 F.Supp. 837 (E.D.Ark.1970), the Arkansas district court determined that 16 percent (16%) was not a significant transfer of accounts. *See also, In re Sun Int'l, Inc.,* 24 B.R. 135 (S.D.Fla.) (concluding that the assignment of 14

percent (14%) of the accounts receivable was not significant).

8. The sum of $49,385.56 (the Woods Receivable) divided by $125,000 (the aggregate accounts receivable at the time) = 39.5 percent (39.5%).